163 N.J. Super. 250 (1978)
394 A.2d 867
HARTFORD ACCIDENT AND INDEMNITY COMPANY, PLAINTIFF-APPELLANT,
v.
THE AMBASSADOR INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 12, 1978.
Decided October 26, 1978.
*251 Before Judges MATTHEWS, KOLE and MILMED.
Mr. William Marriott argued the cause for appellant (Messrs. Evans, Koelzer, Marriott & Osborne, attorneys; Mr. Joel N. Kreizman on the brief).
Mr. Raymond J. Fleming argued the cause for respondent (Messrs. Feuerstein, Sachs & Maitlin, attorneys).
The opinion of the court was delivered by KOLE, J.A.D.
As a result of a fall by Israel Varela, an infant, on property owned by Juarez, which occurred on August 9, 1971, an action for damages was instituted by Varela and his parents against Juarez. A third-party complaint was then filed by Juarez against the manager of the property, Jacko Real Estate Company (Jacko). The Varelas later dismissed their original suit and brought a new action naming both Juarez and Jacko as direct defendants.
Jacko's insurer under a liability policy, Hartford Accident and Indemnity Company (Hartford), assumed its defense and filed an answer on Jacko's behalf. The liability insurer for Juarez, The Ambassador Insurance Company (Ambassador), took over their defense and filed an answer. Cross-claims for contribution and indemnification were filed by both defendants.
*252 The Varela matter was tried on liability only. During trial Hartford's attorneys, having recently discovered that Jacko, as real estate manager, was an additional insured under the Ambassador policy, demanded, unsuccessfully, that Ambassador's attorneys also take over Jacko's defense. As indicated below, a formal similar demand was made after trial.
The jury returned a verdict which found that both defendants were negligent and that their negligence was a proximate cause of the infant Varela's injury. However, the jury determined that under the management agreement between Jacko and Juarez, Jacko was solely responsible. Thereafter, the case was settled by way of a "friendly" judgment between Jacko  i.e., Hartford  and the Varelas for $7,500.
Hartford then instituted the present action against Ambassador to recover one-half of the settlement amount, plus the expense of the Varela case defense, pursuant to the "other insurance" clauses of each insurance policy, which are identical.
In a letter opinion the trial judge determined that Hartford had failed to state a cause of action and entered judgment in favor of Ambassador. Hartford appeals.
The facts in this case are undisputed. Defendant Ambassador issued a liability policy to Juarez, effective September 4, 1970 through September 4, 1971. The policy contained both an "additional insured" clause and an "other insurance" clause.
When the first Varela suit against Juarez only was instituted, an investigation was commenced by the York Claims Service on behalf of Ambassador. Their initial report informed Ambassador that Jacko was the manager of the Juarez property. Ambassador's claims manager admitted that at the time he received this letter he was aware of the policy provision for additional insureds which stated:

II. PERSONS INSURED
Each of the following is an insured under this insurance to the extent set forth below: ...

*253 (d) any person (other than an employee of the named insured) or organization while acting as real estate manager of the named insured; ...
In addition, he admitted that he was aware that both the third-party complaint and the later direct complaint alleged that Jacko was the real estate manager for Juarez. Ambassador afforded no defense since none was requested by Jacko.
There is no evidence that Jacko was informed or even had knowledge that Ambassador, under the Juarez policy, also insured him as real estate manager. There is no indication that Hartford had such knowledge prior to the time that it demanded that Ambassador take over Jacko's defense. Although Hartford's first demand occurred during the Varela trial, it was formally made on February 11, 1975, apparently after trial but prior to settlement of the suit with Varela.
Ambassador, by a February 13 letter, refused to take over the defense on the ground that the demand was not timely made and that Hartford had refused "on several occasions to settle" the case at Ambassador's urging. The record is barren of any proof as to such refusal to settle.[1] It also later refused to involve itself in settlement negotiations, including a discussion of whether the proposed $7,500 settlement was reasonable, claiming that Hartford's assured was solely responsible for any judgment.
The trial judge held that Hartford was not a third-party beneficiary of the insurance contract between Juarez and Ambassador, and that Hartford, by accepting premiums from Jacko, providing Jacko with the coverage purchased, *254 defending Jacko and paying the judgment, did nothing more than it had obligated itself to do under its policy. It determined that Jacko suffered no loss to which Hartford could be subrogated. It found without merit Hartford's contentions that had Jacko been aware that it was insured under the Juarez policy, it might have demanded and obtained from Ambassador a full defense and not have called on Hartford for protection and payment under its policy; that Ambassador must have known that its policy covered Jacko and had an obligation to so inform Jacko, who would then probably have called upon Ambassador, rather than Hartford, to defend; and that because none of the foregoing occurred, Hartford suffered a legally recoverable loss of $7,500. It held that Hartford had no cause of action, tortious or contractual, or predicated on equitable principles of basic fairness.
The trial judge stated that there was no obligation by an insurance company to advise all possible insureds against whom claims might be made that the company had issued a policy affording them coverage; that the burden was on the insured to duly notify the company of any pending claim, such notification constituting a condition precedent to the obligation to defend and pay; and that since no notice was ever given by Jacko to Ambassador, Jacko violated this basic "burden" under the Ambassador policy. The judge further said:
The fact that Ambassador was aware of a claim against Jacko does not mean that it had to volunteer a defense. Jacko might well have chosen to take its legal business elsewhere  as it did. There is no inequity worked upon Hartford. It did that which it was legally required to do once Jacko gave notice to it of the claim. It is entitled to no relief.
The judge further held that the "other insurance" clause contained in both policies did not mean that Ambassador was liable to Hartford for one-half of the $7,500 settlement amount paid. He stated that Hartford's contract was with *255 Jacko, and that if it was aware of the Ambassador policy, it should have advised Jacko that it would pay only one-half of the judgment and that he must make Ambassador exonerate him for the balance. The judge said:
The point is that the presence in separate policies of identical language does not give Hartford a direct action against Ambassador when Ambassador's insured had never made a claim upon it. It may well be that Hartford was a volunteer as to the payment which exceeded one-half, but that does not give it a cause of action, legal or equitable, against Ambassador.
We have concluded that the trial judge misconceived the rights, as between themselves, of the carriers under the "other insurance" clauses of their policies under the circumstances of this case, and that Hartford is entitled to be reimbursed by Ambassador for one-half of the amount of the settlement amount paid to Varela, together with one-half of the costs and counsel fees involved in defending the Varela action. See Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co., 28 N.J. 554, 557-558, 562 (1959); Selected Risks Ins. v. Nationwide Mut. Ins., 133 N.J. Super. 205, 215 (App. Div. 1975).
It cannot be said, in the factual context here presented, that Hartford should be denied relief as a mere volunteer in its defense of Jacko or its payment of more than its one-half share in connection with the Varela action. Hartford's right to require equal reimbursement from Ambassador is predicated on the "other insurance" clauses of both policies, Ambassador's early knowledge that it covered Jacko as an additional insured and that there was a claim against him, and the failure on Ambassador's part to show that it was in any wise truly prejudiced by any conduct or omission by Jacko or Hartford in connection with its ability to defend Jacko or in any other respect.
Jacko, Ambassador's additional insured, never knew that it was covered by Ambassador's policy; and not until some time during the trial of the Varela action did Hartford *256 learn of Ambassador's coverage. Once it acquired that knowledge, Hartford made a timely demand on Ambassador to perform its duty to Jacko under Ambassador's policy and to pay its fair share of the monies expended in the Varela litigation.
We see no merit to the contention that Hartford's reimbursement rights should be thwarted simply because formal notice of the claim was not presented to Ambassador by Jacko.
From the very beginning of the first lawsuit by Varela, Ambassador had ample notice through its early investigation of the claim that Jacko was an additional insured under its policy and that, had a claim been asserted against Jacko, the latter would have been entitled to a defense under Ambassador's policy. Certainly by the time of Varela's second suit making Jacko a direct defendant, Ambassador was aware of that claim. Indeed, even before the second action, Ambassador, for its insured Juarez, had filed a third-party action against Jacko and was aware of the fact that Jacko was insured by it. It thus had a timely opportunity fully to investigate the Varela claim both with respect to Juarez and Jacko. There has been no showing that Ambassador was in any way prejudiced by Jacko's failure to give it notice of the claim or its failure to receive earlier notice from Hartford of a demand with respect to Ambassador's coverage.
We are satisfied that under these circumstances Ambassador was given notice of the claim under its policy within a reasonable time and that even if it were not, it was not prejudiced thereby. Hence, it cannot escape liability on these grounds. Cooper v. Government Employees Ins. Co., 51 N.J. 86, 94 (1968); Costanzo v. Pennsylvania Threshermen, etc., Ins. Co., 30 N.J. 262, 272 (1959); Mariani v. Bender, 85 N.J. Super. 490, 499-500 (App. Div. 1964), certif. den. 44 N.J. 409 (1965); Figueroa v. Peter, 84 N.J. Super. 349, 354 (App. Div. 1964).
The only possible prejudice which Ambassador could have suffered from the lateness of notice  assuming it was late  *257 was a claim that Hartford was guilty of bad faith in refusing to settle for a lesser amount than $7,500. But, as we have already stated, Ambassador has presented no proof to support any such claim. Indeed, had Ambassador fairly treated Jacko by protecting Jacko's rights as an additional assured, conceivably it could have settled for the lower amount if it deemed such action advisable. In this posture of events, it is hardly in a position to complain of the bad faith of Hartford in effecting the undisputably reasonable settlement on behalf of Jacko. See Firemen's Fund Ins. Co. v. Security Ins. Co. of Hartford, 72 N.J. 63, 71-79 (1976). In any event, prior to settlement, Hartford notified Ambassador of the proposed amount and sought its evaluation thereof but the latter declined comment. See Vornado, Inc. v. Liberty Mut. Insurance Co., 106 N.J. Super. 111, 118-119 (Ch. Div. 1969).
We have considered the other arguments raised by the parties. We find them either to be without merit or unnecessary to decide in view of our disposition of this appeal.
Reversed. Judgment shall be entered by the trial court against Ambassador in favor of Hartford for one-half the $7,500 settlement amount, together with one-half of the counsel fees and costs incurred by it in defending the Varela action.
NOTES
[1] It appears from the answers to interrogatories that at some point the matter could have been settled by Hartford for $4,000. But, apart from Ambassador's answer in this case and its letter, there is no proof that it actually urged that Hartford settle at that or any amount below $7,500 or that the failure to settle for a lesser amount constituted bad faith on the part of the Hartford that was or could be in any wise detrimental to Ambassador.