247 N.J. Super. 241 (1991)
588 A.2d 1275
JEFFERSON INSURANCE COMPANY, PLAINTIFF-APPELLANT,
v.
HEALTH CARE INSURANCE EXCHANGE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 3, 1990.
Decided April 4, 1991.
*242 Before Judges GAULKIN, SHEBELL and SKILLMAN.
Donald M. Garson argued the cause for appellant (Buttafuoco, Karpf & Arce, attorneys).
William H. Michelson argued the cause for respondent (Feuerstein, Sachs, Maitlin & Fleming, attorneys).
The opinion of the court was delivered by GAULKIN, P.J.A.D.
Plaintiff Jefferson Insurance Company (Jefferson) brought this action to recover from defendant Health Care Insurance Exchange (HCIE) one-half of a settlement paid by Jefferson on behalf of the parties' common insured.
The settlement had been reached in a personal injury action brought by Mary Geist against Valley Hospital and certain of *243 its employees, including Carin B. Myers, R.N.; Geist alleged that she had fallen and broken her hip because she had not been properly restrained in her bed. Valley Hospital and its employees, including Myers, were covered by a professional liability policy issued by HCIE. Myers also had a private malpractice policy issued by Jefferson. Each policy provided $1 million excess coverage over any "other insurance available to the insured." The parties accordingly agree that the two policies afforded primary, equal and concurrent coverage to Myers. See Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co., 28 N.J. 554, 147 A.2d 529 (1959).
Upon being served with the Geist complaint in November 1986, Valley Hospital arranged for its own representation through HCIE; it instructed Myers to give Jefferson notice of the claim against her. Peter R. Feehan, of Feehan & Feehan, was designated by HCIE to represent the hospital and Patrick F.X. Fitzpatrick, of De Gonge, Garrity & Fitzpatrick, was designated by Jefferson to represent Myers. Following discovery proceedings, the matter was listed for trial on January 4, 1988. During settlement discussions conducted that day, Fitzpatrick demanded HCIE's commitment to pay one-half of the contemplated settlement. After consulting with HCIE, Feehan told Fitzpatrick that Jefferson "would have to sue them if they don't pay it." Fitzpatrick obtained authority from Jefferson to contribute $80,000 to the settlement and reported to the court, with Geist's counsel, that the matter had been settled for $170,000. Fitzpatrick did so, he testified at deposition, believing that Jefferson and HCIE would each contribute $80,000 and that a third carrier would contribute $10,000 on behalf of another defendant. In reporting the settlement to the court, however, the attorneys did not recite the anticipated contributions of the carriers nor did they make the settlement contingent on approval of all the carriers.
When HCIE thereafter refused Jefferson's demand to contribute $80,000 to effectuate the settlement, Jefferson brought this action seeking judgment for $80,000 "as per the agreement *244 entered into between the carriers." Geist then moved in the underlying action to enforce the settlement; an order was entered declaring that the settlement "was fair and reasonable" and directing that Jefferson pay the entire settlement sum, with HCIE's obligation to "abide the outcome of the pending litigation."
On cross-motions for summary judgment filed after discovery was completed, the motion judge held that Jefferson "unilaterally sought and obtained the settlement of the case with [Geist]" and that Jefferson thus "is solely responsible for the settlement amount." Jefferson appeals from the judgment thereupon entered. We reverse.
In concluding that HCIE was not obligated to contribute to the settlement, the motion judge relied principally on this language in American Home v. St. Paul Fire & Marine, 233 N.J. Super. 137, 558 A.2d 65 (App.Div. 1989):
... if [two primary carriers] are known to each other and make no demand on each other for contribution to the defense, it must be assumed that the one which has exclusively undertaken the defense has done so voluntarily and in order to secure the litigation advantages which exclusive control confers. In any event, ... whatever contribution obligation would be imposed on the other primary insurer could not accrue until that insurer were requested to participate on some basis.
Id. at 144, 558 A.2d 65. We do not find that holding applicable here.
American Home considered the liability of two primary carriers for the costs incurred in successfully defending a legal malpractice action brought against their common insured, Goldsmith. Goldsmith had a malpractice policy written by American Home; his law firm had a policy written by St. Paul under which Goldsmith was also entitled to defense and indemnity. When Goldsmith and his firm were sued by a former client, American Home chose and paid for Goldsmith's attorney and St. Paul chose and paid for the firm's attorney. Those arrangements were undertaken with the carriers' "mutual knowledge and tacit approval." Id. at 140, 558 A.2d 65. Some four and one-half years later, American Home asked Goldsmith to arrange *245 for St. Paul to "join in your defense and in any indemnity obligation." Ibid. Goldsmith failed to do so and American Home itself never made such a demand on St. Paul. The following year, however, American Home brought suit to require St. Paul to contribute to the costs of Goldsmith's defense.
After finding that the two policies afforded Goldsmith concurrent primary coverage, we exonerated St. Paul from liability for the costs of Goldsmith's defense "on equitable grounds." Id. at 142, 558 A.2d 65. We reasoned that carriers with equal obligations to defend "will arrange between themselves on a voluntary basis the manner in which they will share the responsibilities, financial and strategic, for the defense"; accordingly, we found it reasonable to infer that a carrier "which has exclusively undertaken the defense has done so voluntarily." Id. at 144, 558 A.2d 65. Since American Home did not seek St. Paul's participation until the litigation was in its fifth year, we concluded that American Home had voluntarily assumed Goldsmith's defense and thus "must exclusively bear the full cost." Id. at 145, 558 A.2d 65.
As Jefferson acknowledged at oral argument, American Home justifies dismissal of its demand that HCIE contribute to its costs for Myers' defense. But American Home does not discuss at all the obligation of a concurrent carrier to contribute to a settlement. That question was addressed in Hartford Acc. & Indem. Co. v. Ambassador Ins. Co., 163 N.J. Super. 250, 394 A.2d 867 (App.Div. 1978). There plaintiff brought a personal injury action against a property owner and his manager. The owner was insured by Ambassador, whose policy included the manager as an additional insured; the manager also had his own policy, issued by Hartford. Ambassador provided the defense for the owner; Hartford provided the defense for the manager. After a jury found that the manager was solely responsible, Hartford settled the action for $7500 and then sued Ambassador to recover "one-half of the settlement amount, plus the expense of the ... defense." Id. at 252, 394 A.2d 867. The trial judge dismissed Hartford's claim, concluding among *246 other things that "[i]t may well be that Hartford was a volunteer as to the payment which exceeded one-half." Id. at 255, 394 A.2d 867.
We rejected the view "that Hartford should be denied relief as a mere volunteer." Ibid. We found that the two carriers were equally obligated to indemnify the manager, that Ambassador had "early knowledge that it covered [the manager] as an additional insured and that there was a claim against him" (ibid.) and that Ambassador also had "timely opportunity" to investigate the claim (id. at 256, 394 A.2d 867); moreover, Ambassador had failed to show that it was "in any wise truly prejudiced" by any conduct of the manager or Hartford. Id. at 255, 394 A.2d 867. Noting that Hartford had notified Ambassador of the proposed settlement and "sought [Ambassador's] evaluation thereof", we concluded that Ambassador was obligated to contribute one-half of "the undisputably reasonable settlement" made by Hartford on behalf of the manager.[1]Id. at 257, 394 A.2d 867.
The holding in Hartford is consistent with recent case law in other jurisdictions. As stated in Appleman, Insurance Law and Practice, § 4921 at 535 (1981), some "early cases" denied contributions to an insurer which voluntarily paid more than its share of a loss, but
[t]he majority of cases now recognize the undesirability of rewarding the insurer which refuses to honor its contractual obligations, and hold that payment by an insurer which properly undertakes a burden of settlement or defense does not render it a volunteer not entitled to recover.
Id. at 538. That rule has been justified on a number of grounds: because the equitable principle of contribution should be available to an insurer paying "a debt which is equally owed by ... other insurers" (Royal Globe Ins. Co. v. Aetna Ins. Co., 82 Ill. App.3d 1003, 38 Ill.Dec. 449, 451, 403 N.E.2d 680, 682 *247 (1980); because the non-settling carrier "would be unjustly enriched if [the settling carrier's] payment were to relieve it of liability" (Nichols v. Anderson, 837 F.2d 1372, 1377-1378 (5th Cir.1988)); because both carriers "had entered into solemn contracts of insurance by which they contracted ... to act in [the insured's] best interest in negotiating and settling all claims made against him" (State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co., 255 So.2d 667, 669 (Miss. 1971)); because an insurer who refuses to participate "cannot now be heard to avoid contribution to the settlement on the grounds that he did not participate in negotiating it" (Medical Protective Co. v. Bell, 716 F. Supp. 392, 405 (W.D.Mo. 1989), rev'd on other grounds, 912 F.2d 244 (8th Cir.1990)); and because public policy should "encourage insurance companies to make a swift settlement of claims" and not "force an insured, who has coverage under more than one policy, to institute legal action to collect payment for the loss in cases where a dispute arises between the insurance carriers over their respective liabilities" (St. Paul Fire & Marine Ins. Co. v. Allstate Ins. Co., 25 Ariz. App. 309, 543 P.2d 147, 150 (1975). See also Vigilant Ins. Co. v. Employers Ins. of Wausau, 626 F. Supp. 262 (S.D.N.Y. 1986); Federal Ins. Co. v. Atlantic Nat. Ins. Co., 25 N.Y.2d 71, 302 N.Y.S.2d 769, 250 N.E.2d 193 (1969).
Hartford and the out-of-state authorities thus satisfy us that a settling carrier has a cause of action against a non-settling carrier for contribution to a settlement effected on behalf of their common insured. We need not determine here whether that cause of action requires a showing that the non-settling carrier had prior notice of the claim asserted against it or of the proposed settlement: there is no dispute that HCIE had notice of both. Cf. Hartford, supra, 163 N.J. Super. at 255-257, 394 A.2d 867. Nor need we determine whether the cause of action is available to a settling carrier which has relinquished responsibility for the defense to the non-settling carrier: Jefferson and HCIE had arranged between themselves that Jefferson would be responsible for Myers' defense. Cf. American Home, 233 N.J. Super. at 144, 558 A.2d 65. Guided by our case law *248 developed in closely parallel settings, we hold that Jefferson is entitled to HCIE's contribution if the settlement was reasonable in amount and entered in good faith. See Griggs v. Bertram, 88 N.J. 347, 368, 443 A.2d 163 (1982) (insured entitled to recovery for reasonable and good faith settlement reached after carrier wrongfully disclaimed); Firemen's Fund Ins. Co. v. Security Ins. Co., 72 N.J. 63, 75, 367 A.2d 864 (1976) (insured entitled to recovery for reasonable and good faith settlement reached after carrier wrongfully refused to settle). Although HCIE's refusal to settle may not have been in bad faith or otherwise wrongful, its interest in continuing the Geist litigation cannot be permitted to prevail over Jefferson's right and duty to act in the best interests of their common insured. Cf. Hartford, supra, 163 N.J. Super. at 257, 394 A.2d 867.
Drawing further on Griggs, we also hold that the burden of going forward with proofs as to reasonableness and good faith rests on Jefferson, but the ultimate burden is on HCIE to prove unreasonableness or lack of good faith. Griggs, supra, 88 N.J. at 368, 443 A.2d 163.
Although the order enforcing the Geist settlement against Jefferson recited that the settlement "was fair and reasonable", the record does not indicate the motion judge's reasons for that finding, nor does it indicate that HCIE had a fair opportunity to present contrary proofs and argument. Accordingly, we must remand this matter to the trial court for a plenary hearing to determine the reasonableness and good faith of Jefferson's settlement.
The summary judgment entered in favor of HCIE is reversed. The matter is remanded to the Law Division for proceedings consistent with this opinion.
NOTES
[1] Ambassador was also required to reimburse Hartford for one-half of its counsel fees and costs; we need not determine whether that aspect of the Hartford ruling, in the context of the facts of that case, is consistent with the later holding of American Home, supra.