940 A.2d 315

EMILY MARSHALL, AN INFANT, JOHN MARSHALL, INDIVIDU-ALLY AND AS EXECUTOR OF THE ESTATE OF GRETA SCHMIDT, AND AS GUARDIAN AD LITEM FOR EMILY MAR-SHALL, PLAINTIFFS, v. RARITAN VALLEY DISPOSAL, ED-WARD HAWLEY, DEFENDANTS, AND TOWNSHIP OF WEST AMWELL, DEFENDANT/THIRD–PARTY PLAINTIFF/RESPON-DENT/CROSS–APPELLANT, v. ILLINOIS NATIONAL INSUR-ANCE   COMPANY,   THIRD–PARTY   DEFENDANT/APPEL-LANT/CROSS–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 23, 2007—Decided February 14, 2008.

Before Judges SKILLMAN, WINKELSTEIN and YANNOTTI.

*John T. Wolak* argued the cause for appellant/cross-respondent (*Gibbons, P.C.,* attorneys; *Mr. Wolak* and *Andrew B. Smith,* on the brief).

*Todd J. Leon* argued the cause for respondent/cross-appellant (*Hill Wallack,* attorneys; *Mr. Leon* and *Jeffrey L. Shanaberger,* on the brief).

The opinion of the court was delivered by

SKILLMAN, P.J.A.D.

The issue presented by this appeal is whether an insured that has had all costs of defense and settlement of a claim paid by one insurer may pursue a coverage action against a second insurer even though the first insurer would be subrogated to any recovery from the second insurer. We conclude that an insured lacks standing to maintain a coverage action under such circumstances and that the first insurer's claim for contribution against the second insurer is the only coverage claim that survives the settlement. We also conclude that the first insurer must pursue this claim in its own name.

## I

Defendant Raritan Valley Disposal (RVD) contracted with defendant West Amwell to furnish a garbage truck at the municipal transfer station for West Amwell's residents to deposit their trash every Saturday. RVD was responsible for bringing the truck to the transfer station and parking it at a location designated by the West Amwell employee in charge of the site. RVD's driver had no responsibility for assisting West Amwell's residents in loading

trash. Once the RVD garbage truck was filled or the transfer station was closed for the day, RVD was responsible for removing the truck and disposing of its contents.

The contract under which this service was performed obligated RVD to maintain insurance coverage and list West Amwell as an "additional named insured." To satisfy this obligation, RVD named West Amwell as an additional insured under its business automobile policy, which had been issued by third-party defendant Illinois National Insurance Company (Illinois National).

On May 12, 2001, Greta Schmidt was fatally injured while unloading her trash at the West Amwell transfer station. The accident occurred when another West Amwell resident, defendant Edward Hawley, backed his pick-up truck into Schmidt, pinning her against the parked RVD garbage truck. Ms. Schmidt's five-year-old daughter, Emily Marshall, observed the fatal accident from inside Schmidt's car.

Following the accident, Schmidt's estate brought this survivorship and wrongful death action against Hawley, West Amwell, RVD and the manufacturer of Hawley's pick-up truck, Ford Motor Company. The complaint also asserted an emotional distress claim on behalf of Ms. Schmidt's daughter.

At the time of the Schmidt accident, West Amwell was not only named as an additional insured under the policy Illinois National issued to RVD but also had its own general liability policy issued by the Public Alliance Insurance Coverage Fund (PAIC). West Amwell notified PAIC of the accident and subsequent lawsuit, and PAIC undertook West Amwell's defense in accordance with its obligations under the policy.

After the lawsuit had been pending for several years, West Amwell filed a third-party complaint against Illinois National seeking coverage under the policy Illinois National had issued to RVD. Before there was a ruling on this third-party complaint, PAIC entered into a settlement of the Schmidt estate's claim against West Amwell for $1,850,000. Hawley's insurer settled the

claims against him for $500,000, and Ford settled for $15,000. The case subsequently proceeded to trial solely against RVD, which resulted in a jury verdict in RVD's favor.

Notwithstanding PAIC's defense and settlement of the underlying action on its behalf, West Amwell continued to pursue its third-party coverage action against Illinois National. This claim was brought before the trial court on cross-motions for summary judgment. Illinois National argued that West Amwell lacked standing to pursue a coverage action for the defense costs and settlement PAIC had paid on its behalf. Illinois National also argued that the business automobile policy it had issued to RVD did not provide coverage to West Amwell for the Schmidt estate's claim and that the $1,850,000 PAIC agreed to pay in settlement of that claim was unreasonable.

The trial court concluded that the Illinois National policy provided coverage to West Amwell for the Schmidt estate's claim and that the amount PAIC paid to settle that claim was not unreasonable. However, the court did not address Illinois National's argument that West Amwell lacked standing to pursue the coverage action. Based on these rulings, the court entered judgment in West Amwell's favor against Illinois National for $1,000,000, which was the full amount of coverage provided under the Illinois National policy, plus the costs of defense of the Schmidt estate's claim from the date of West Amwell's demand for defense and prejudgment interest.

Illinois National filed a motion for reconsideration based partly on the trial court's failure to address its argument that West Amwell lacked standing to pursue the coverage action because PAIC had paid all costs of the defense and settlement of the Schmidt estate's claim and, as a result, West Amwell no longer had financial interest in the coverage action against Illinois National.

The court denied the motion by a lengthy written decision. In rejecting Illinois National's standing argument, the court recognized that PAIC was the real party in interest in pursuing the

coverage action against Illinois National because PAIC had been subrogated to West Amwell's claim upon payment of the costs of West Amwell's defense and settlement of the underlying action. However, the court concluded that this circumstance did not require the action to be pursued in PAIC's name. The court stated that New Jersey's substitution rule, *Rule* 4:34–3, was permissive only, and it concluded that West Amwell could "continue[] the action in its name although the matter is actually an insurance company pursuing rights of subrogation." The trial court also denied a motion by West Amwell for an award of the counsel fees and costs it had incurred in pursuing the coverage action.

Illinois National appeals from the summary judgment in West Amwell's favor on the coverage claim and the denial of its motion for reconsideration. Illinois National argues that: (1) West Amwell lacked standing to pursue a coverage claim against Illinois National because the full costs of its defense and settlement of the Schmidt estate claim had been paid by PAIC; (2) Illinois National's policy did not provide coverage to West Amwell for the Schmidt estate's claim; and (3) West Amwell failed to prove that the amount of its settlement with the estate was reasonable. West Amwell cross-appeals from the denial of its motion for an award of the counsel fees and costs it incurred in the coverage action against Illinois National.

We conclude that West Amwell lacked standing to pursue a coverage action against Illinois National once PAIC paid all costs of its defense and settlement of the Schmidt estate's claim. Consequently, we reverse the judgment in West Amwell's favor on the third-party complaint and remand the case to the trial court to allow PAIC to be substituted for West Amwell as the third-party plaintiff. This disposition makes it unnecessary to address Illinois National's other arguments.

Because West Amwell lacked standing to pursue a coverage action against Illinois National, it is not entitled to an award of the counsel fees and costs it incurred in pursuing that action. There-

fore, on West Amwell's cross-appeal from the trial court's denial of such an award, we affirm.

## II

*Rule* 4:26–1 provides in pertinent part that "[e]very action may be prosecuted in the name of the real party in interest[.]" This rule is "ordinarily determinative of standing to prosecute an action." Pressler, *Current N.J. Court Rules,* comment 2.1 on *R.* 4:26–1 (2008).

"[T]o have standing, a party must have 'a sufficient stake and real adverseness with respect to the subject matter of the litigation[.]' " *Town of Secaucus v. Hudson County Bd. of Taxation,* 133 *N.J.* 482, 491–92, 628 *A.*2d 288 (1993) (quoting *N.J. Chamber of Commerce v. N.J. Election Law Enforcement Comm'n,* 82 *N.J.* 57, 67, 411 *A.*2d 168 (1980)). "A financial interest in the outcome of litigation is ordinarily sufficient to confer standing." *Assocs. Commercial Corp. v. Langston,* 236 *N.J.Super.* 236, 242, 565 *A.*2d 702 (App.Div.), *certif. denied,* 118 *N.J.* 225, 570 *A.*2d 979 (1989).

■ A party who claims to be an insured has a sufficient financial interest to seek a declaration of such coverage even though that party also has other insurance coverage and the other insurer has already undertaken its defense. This interest generally derives from the fact that the coverage provided under one policy may be insufficient to protect the insured from its full exposure to liability. *See, e.g., Owens–Illinois, Inc. v. United Ins. Co.,* 138 *N.J.* 437, 650 *A.*2d 974 (1994).

■ West Amwell had such an interest in additional insurance coverage when it filed the third-party complaint against Illinois National because its policy with PAIC had a single occurrence policy limit of $5,000,000, and the Schmidt estate's claims were sufficiently substantial that West Amwell was exposed to a verdict in excess of that limit. Therefore, West Amwell had the required standing to file the third-party complaint.

■ An insurer that has provided coverage to its insured also has a sufficient financial interest in obtaining a declaration that another insurer provided coverage for the same occurrence to have standing to pursue a coverage action against the other insurer for contribution to the costs of defense and indemnification of their common insured. *See, e.g., Cosmopolitan Mut. Ins. Co. v. Cont'l Cas. Co.,* 28 *N.J.* 554, 147 *A.2d* 529 (1959); *Jefferson Ins. Co. v. Health Care Ins. Exch.,* 247 *N.J.Super.* 241, 245–48, 588 *A.2d* 1275 (App.Div.1991). Therefore, PAIC would have had standing to pursue a coverage action against Illinois National at any time after it received West Amwell's request for a defense in the action brought by the Schmidt estate.

■ Although an insured and its insurer both have standing to pursue coverage actions against another insurer that has issued a policy that allegedly provides coverage for the same occurrence, this does not mean that their claims are identical. The insured's claim is ordinarily governed solely by the terms of the alleged second insurer's policy. On the other hand, the claim of the first insurer is governed not only by the terms of the second insurer's policy but also by its own policy. *See Cosmopolitan, supra,* 28 *N.J.* at 558–63, 147 *A.2d* 529. Insurance policies generally contain provisions which indicate whether the coverage provided thereunder is primary, secondary or excess and the effect of "other insurance" upon the insurer's obligations. *See* Lee R. Russ & Thomas F. Segalia, *Couch on Insurance* §§ 217.1 to 217.5 (3d ed.1999). Moreover, where multiple policies affording coverage for the same occurrence contain conflicting "other insurance" clauses, the trial court must resolve those conflicts in accordance with the principles set forth in *Cosmopolitan, supra,* 28 *N.J.* at 559–64, 147 *A.2d* 529. *See also Hanco v. Sisoukraj,* 364 *N.J.Super.* 41, 47–48, 834 *A.2d* 443 (App.Div.2003); *Universal Underwriters Ins. Co. v. CNA Ins. Co.,* 308 *N.J.Super.* 415, 417–21, 706 *A.2d* 217 (App.Div.1998). If the policies are found to be co-primary, the insurers are required to apportion the costs of the settlement and

defense equally.  *Cosmopolitan, supra,* 28 *N.J.* at 564, 147 *A.*2d 529.

With this understanding of the differences between the claims that an insured and its insurer may maintain against an alleged other insurer, it is clear that West Amwell lost standing to pursue its coverage action against Illinois National once PAIC settled the Schmidt estate's claim on its behalf.  As a result of that settlement, PAIC paid all the costs of West Amwell's defense and the full amount of its settlement with the estate.  West Amwell was not entitled to double indemnification of those costs even if Illinois National's policy also provided West Amwell with coverage for the estate's claim.  *See Couch on Insurance, supra,* § 217.1. Therefore, West Amwell no longer had the financial stake required to pursue a coverage action against Illinois National.

However, PAIC's coverage claim against Illinois National, which it had failed to assert up to that point, survived the settlement because PAIC paid all the costs of defense and settlement of the Schmidt estate's claim, to which Illinois National could be obligated to contribute if its policy also provided coverage for the accident.  *See Jefferson, supra,* 247 *N.J.Super.* at 245–48, 588 *A.*2d 1275.  Moreover, PAIC was required to pursue this claim in its own name rather than in the name of West Amwell.  *See United States v. Aetna Cas. & Surety Co.,* 338 *U.S.* 366, 380–81, 70 *S.Ct.* 207, 215, 94 *L.Ed.* 171, 185 (1949) (holding that "[i]f the [insurer] has paid an entire loss suffered by the insured, it is the only real party in interest and must sue in its own name.").  This claim could have been asserted either by PAIC filing a separate action against Illinois National or, as discussed in section III of this opinion, by the substitution of PAIC for West Amwell under *Rule* 4:34–3.[1]

---

[1] We note that Illinois National also could have joined PAIC as a party to the action by filing a fourth-party complaint.

Instead of pursuing either of these courses of action, PAIC, which had full control over West Amwell's defense and third-party complaint, continued to pursue the coverage claim against Illinois National solely in West Amwell's name. PAIC's theory was that, as a result of its settlement of the Schmidt estate's claim on West Amwell's behalf, it was entitled to pursue West Amwell's coverage action against Illinois National as a subrogation action. Under this theory, there was no need to review the terms of PAIC's policy or to compare the coverage and other insurance provisions of the PAIC and Illinois National policies. The trial court accepted this theory and entered judgment against Illinois National, nominally in favor of West Amwell but, as the parties recognized at oral argument before us, actually in favor of PAIC.

This ruling enabled PAIC to step into West Amwell's shoes and obtain the full amount of coverage provided under the Illinois National policy without showing that that policy provided primary or co-primary coverage for the Schmidt estate's claim. This ruling also enabled PAIC to obtain a greater contribution from Illinois National to the settlement of the Schmidt estate's claim than it could have recovered if it had pursued the coverage claim in its own name; under *Cosmopolitan, supra,* 28 *N.J.* at 564, 147 *A.*2d 529, Illinois National would have been subject, in such an action, to liability for only half the $1,850,000 settlement amount, or $925,000, which is $75,000 less than the $1,000,000 the trial court awarded West Amwell acting on PAIC's behalf. In short, the trial court not only allowed the coverage action against Illinois National to be brought in the name of West Amwell, which was not the real party in interest, but also ruled in West Amwell's favor without requiring it to prove an essential element of the claim of the real party in interest, PAIC—that the Illinois National policy provided primary or co-primary coverage for the Schmidt estate's claim—and awarded West Amwell more than PAIC would have been able to recover. Therefore, the judgment against Illinois National must be reversed.

### III

The next question is whether West Amwell's third-party complaint must be dismissed for lack of standing or whether PAIC may be substituted for West Amwell as a third-party plaintiff in accordance with *Rule* 4:34–3. This rule provides in pertinent part:

> In any case of any transfer of interest, the action may be continued by or against the original party, unless the court on motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.

There is no New Jersey case law interpreting *Rule* 4:34–3, or its predecessor, *R.R.* 4:38–3, and there is only limited federal case law interpreting its counterpart in the federal rules, *F.R.C.P.* 25(c), which until a recent amendment, effective December 1, 2007, was worded almost identically to *Rule* 4:34–3. One commentator has described *F.R.C.P.* 25(c) as "amongst the most obscure and least known of the eighty-nine substantive Federal Rules of Civil Procedure." Shaun P. Martin, *Substitution,* 73 *Tenn. L.Rev.* 545, 545 (2006).

The federal cases indicate that substitution under *F.R.C.P.* 25(c) is permissive, and if the trial court does not order substitution, the action may be continued in the name of the original party in interest. *See Luxliner P.L. Export Co. v. RDI/Luxliner, Inc.,* 13 *F.*3d 69, 71 (3d Cir.1993). There are also federal cases which state that *F.R.C.P.* 25(c) "is not designed to create new relationships between the parties to a suit but is designed to allow the action to continue unabated when an interest in the lawsuit changes hands." *In re Covington Grain Co.,* 638 *F.*2d 1362, 1364 (5th Cir.1981).

This view of the federal counterpart to *Rule* 4:34–3 could support the conclusion that substitution of PAIC for West Amwell as third-party plaintiff is not authorized by *Rule* 4:34–3 because of the previously discussed differences between West Amwell's and PAIC's coverage claims against Illinois National. However, both the trial court and the parties have already invested substantial time and resources in adjudicating those claims. Moreover, both West Amwell's and PAIC's claims derive from the same coverage

provisions of the Illinois National policy and, like its federal counterpart and the predecessor New Jersey court rule, *Rule 4:34–3* vests substantial discretion in the court to determine whether substitution would be appropriate under the circumstances of a particular case. *See* Morris M. Schnitzer & Julius Wildstein, *New Jersey Rules Service: 1954 to 1967*, comment 7 on *R.R.* 4:38–3. Therefore, we conclude that the interests of efficient judicial administration would be served by allowing PAIC to substitute for West Amwell as the third-party plaintiff rather than requiring PAIC to file a separate action against Illinois National.

Accordingly, we remand the case to the trial court to enable PAIC to substitute for West Amwell as third-party plaintiff. If PAIC elects not to pursue the coverage claim against Illinois National in its own name, West Amwell's third-party complaint should be dismissed for lack of standing.

## IV

Finally, we consider it unnecessary to address Illinois National's arguments that its policy did not provide coverage to West Amwell for the Schmidt estate's claim and that the amount of the settlement of that claim was unreasonable. Because PAIC is not a named party to this appeal, it is unclear whether any conclusion we might reach regarding those issues would be binding upon PAIC. Moreover, if PAIC declines to pursue the third-party complaint in its own name or if the trial court concludes that the policy Illinois National issued to RVD did not provide West Amwell with primary or co-primary coverage for the Schmidt estate's claim, it would be unnecessary to decide those issues.

Accordingly, the judgment in West Amwell's favor on the third-party complaint is reversed, and the case is remanded to the trial court for further proceedings in conformity with this opinion. The order denying West Amwell's motion for an award of its counsel fees and costs in the coverage action is affirmed.