No. 13-1153 – *State of West Virginia ex rel. Owners Insurance Company v. Honorable Warren R. McGraw, Judge of the Circuit Court of Wyoming County, West Virginia, and Morlan Enterprises, Inc.*

**FILED**

**June 18, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Justice Ketchum, concurring, in part, and dissenting, in part:

I agree with the majority that, on the first three claims made by Owners Insurance, the writ of prohibition should be denied. There just wasn't enough in the record to conclude that the circuit court has exceeded its legitimate authority.

Still, I dissent because I would have granted a writ of prohibition on the fourth error, which pertains to the theory that Morlan Enterprises can collect damages for attorney fees and expenses ("defense costs") paid by its insurer, Westfield Insurance. I believe that the learned trial judge was absolutely right that those defense costs were a collateral source to Morlan. The problem is, Morlan has absolutely no cause of action or legal right to collect those defense costs from Owners Insurance. Because it is a "clear error of law" to allow Morlan to try and collect those defense costs, I would have granted the writ as moulded. *See* Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996) ("the existence of clear error as a matter of law, should be given substantial weight").

Before I discuss the case, let me say one additional thing. This case is a typical example of where the lawyers didn't give a good trial judge a chance to rule correctly. Too often, lawyers don't provide the judge with the right law on the issue; they

1

just argue from their gut and pound on the table.[1]  Trial judges are not encyclopedias of the law.  They deal with many different legal issues every day.  The lawyers must present the judge with the correct law when novel questions are raised in their cases.

The relevant underlying facts of this case are these: Bobby Messer was severely injured when he touched a live power line.  Among others, he sued the two companies that energized the power line: Morlan Enterprises, and its subcontractor Paul Kerns.  Morlan was insured by Westfield Insurance Company; Kerns was insured by petitioner Owners Insurance Company.  However, at the request of Kerns, Owners had issued a certificate of insurance listing Morlan Enterprises as an "additional insured" on Kerns's liability policy.

In the lawsuit, Morlan Enterprises was defended by its liability insurance carrier, Westfield.  Westfield hired and paid a defense lawyer's fees and costs.  Under the terms of the policy, Morlan did not hire and had no obligation to pay the defense lawyer.  Meanwhile, Owners Insurance defended Kerns from the lawsuit, but initially denied coverage to Morlan, its "additional insured."  However, Owners Insurance ultimately relented and settled the case for both Morlan and Kerns, and plaintiff Messer released all of his tort claims.

After the settlement, Morlan filed a third-party complaint against Owners Insurance for initially denying coverage and failing to provide a defense.  The complaint

---

[1] There's an old legal aphorism that goes, "If you have the facts on your side, pound the facts.  If you have the law on your side, pound the law.  If you have neither on your side, pound the table."

2

alleged first-party bad faith and, among other damages, Morlan seeks to collect from Owners Insurance all of the defense costs paid by Westfield Insurance.

Judge McGraw presciently ruled that, under the collateral source rule, Owners Insurance can't mention at trial that Morlan's insurance carrier (Westfield) paid all of Morlan's defense costs. Owners Insurance has – incorrectly – argued that because those defense costs were never "incurred or paid" by Morlan that the collateral source rule doesn't apply.

We rejected the precise argument made by Owners Insurance in our recent case of *Kenney v. Liston*, ___ W.Va. ___, ___ S.E.2d ___, 2014 WL 2565563 (No. 13-0427, June 4, 2014), where we expounded upon the collateral source rule in West Virginia. In *Kenney*, this Court explicitly rejected the idea that the collateral source rule "operates solely to protect 'payments.'" The collateral source rule protects a plaintiff's right to recover the reasonable value of their damages, not merely "the expenditures actually made or obligations incurred." *Id.*, Syllabus Point 6. As the Court stated in Syllabus Point 4,

> The collateral source rule protects payments made to or benefits conferred upon an injured party from sources other than the tortfeasor by denying the tortfeasor any corresponding offset or credit against the injured party's damages. Even though these collateral sources mitigate the injured party's loss, they do not reduce the tortfeasor's liability.

My reason for dissenting is this: for a plaintiff to avail him/her/itself of the collateral source rule, the plaintiff must first have a viable cause of action for the injury, harm, or damages they seek. Here, the cause of action for payment of defense costs does

3

not belong to the plaintiff, Morlan Enterprises. Instead, the cause of action to recover defense costs belongs unequivocally to Westfield Insurance, who paid these costs. It was Westfield that paid 100% of the defense costs for Morlan in the underlying lawsuit, when Owners Insurance (allegedly) should have paid at least 50%. Hence, it is Westfield that has the cause of action for damages. Let me explain.

Morlan never paid out a penny to defend the underlying action by Messer. All of those defense costs were paid by Westfield. Owners allegedly had a duty to pay half of those defense costs, but allegedly ducked its duty and stuck Westfield with the entire defense bill. This triggers a cause of action only for Westfield that is known as the "doctrine of equitable contribution."

The doctrine of equitable contribution arises when two (or more) separate insurance companies have the same obligation to cover the same claim. If one insurer pays the claim and the other insurer pays nothing, then the first insurer has an equitable cause of action for contribution for a share of any payouts from the non-paying second insurer. Steven Plitt *et al.,* 16 *Couch on Insurance 3d* § 222:98. "[T]he doctrine of equitable contribution is recognized in the majority of states and provides that an insurer paying more than its fair share of a loss has the right to seek contribution from other insurers whose policies are also impacted." Scott Seaman, Jason Schulze, *Allocation of Losses in Complex Insurance Coverage Claims*, § 5.2 (2nd Ed. 2006).[2]

---

[2] *See*, *e.g.*, *Regal Homes, Inc. v. CNA Ins.*, 217 Ariz. 159, 171 P.3d 610, 620 (Ct. App. Div. 1 2007); *Marshall v. Raritan Valley Disposal*, 398 N.J. Super. 168, 940 A.2d 315 (App. Div. 2008); *CNH Capital v. Janson Excavating, Inc.*, 171 Ohio App. 3d 694, 872 N.E.2d 980, 984 (1st Dist. 2007); *Heartland Payment Systems, L.L.C. v. Utica Mut.*

"[E]quitable contribution applies *only between insurers*, and only in the absence of contract, and therefore it has no place between insurer and insured, which have contracted the one with the other." 16 *Couch on Insurance 3d* § 222:98 (emphasis added). Applied to this case, Westfield Insurance and Owners Insurance (allegedly) had an equal obligation to provide Morlan with a defense. Westfield provided the defense in the underlying case, and Owners Insurance did not. Now that the underlying case is concluded, the law is clear that Westfield – not Morlan – has a cause of action in equity against Owners to be reimbursed for a share of the defense costs.

Of course, Westfield could assign its cause of action for defense costs to Morlan.[3] But that did not happen. In fact, at oral argument, the parties suggested that

*Ins. Co.*, 185 S.W.3d 225 (Mo. Ct. App. E.D. 2006); *Security Ins. Co. of Hartford v. Lumbermens Mut. Cas. Co.*, 264 Conn. 688, 826 A.2d 107 (2003); *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal. App. 4th 1279, 77 Cal. Rptr. 2d 296 (1st Dist. 1998); *National Union Fire Ins. Co. v. American Motorists Ins. Co.*, 269 Ga. 768, 504 S.E.2d 673 (1998); *Sharon Steel Corp. v. Aetna Cas. and Sur. Co.*, 931 P.2d 127, 139 (Utah 1997); *Nationwide Mut. Ins. Co. v. Hall*, 643 So.2d 551 (Ala. 1994); *J.H. France Refractories Co. v. Allstate Ins. Co.*, 534 Pa. 29, 626 A.2d 502 (1993); *National Cas. Co. v. Great Southwest Fire Ins. Co.*, 833 P.2d 741 (Colo. 1992); *Zurich-American Ins. Cos. v. Atlantic Mut. Ins. Cos.*, 139 A.D.2d 379, 531 N.Y.S.2d 911, 916 (1st Dep't 1988), order aff'd, 74 N.Y.2d 621, 541 N.Y.S.2d 970, 539 N.E.2d 1098 (1989); *National Indem. Co. v. St. Paul Ins. Cos.*, 150 Ariz. 458, 724 P.2d 544 (1986); *Indiana Ins. Co. v. Sentry Ins. Co.*, 437 N.E.2d 1381 (Ind. Ct. App. 1982); *Royal Globe Ins. Co. v. Aetna Ins. Co.*, 82 Ill. App. 3d 1003, 403 N.E.2d 680 (1st Dist. 1980); *Marwell Const., Inc. v. Underwriters at Lloyd's, London*, 465 P.2d 298 (Alaska 1970); *United Services Auto. Ass'n v. Hartford Acc. & Indem. Co.*, 220 Tenn. 120, 414 S.W.2d 836, 841 (1967); *Carolina Cas. Ins. Co. v. Oregon Auto. Ins. Co.*, 242 Or. 407, 408 P.2d 198 (1965).

[3] For example, in *Howard v. Am. Nat. Fire Ins. Co.*, 187 Cal.App.4th 498, 115 Cal.Rptr.3d 42 (2010), numerous plaintiffs claimed they were molested by a priest over many years, and sued the bishop who negligently retained the priest. The bishop contacted three liability insurers who provided coverage over the years. Two insurers provided a defense to the bishop; the third said there was no coverage and refused a

Westfield is pursuing its own action against Owners Insurance to be reimbursed its defense costs. If true, and Morlan is allowed to also recover defense costs from Owners, then Owners may unfairly be exposed to double damages.

The learned trial judge did not consider the doctrine of equitable contribution for a salutary reason: the parties never raised, briefed, or discussed the issue. As this case goes forward, the obligation to do the research lies with the lawyers, not the judge. I dissent because the law of equitable contribution is so clear, and I believe Morlan Enterprises should be prohibited from pursuing the defense costs paid by Westfield from Owners.

On remand, the parties and the circuit court should not feel restrained from raising the doctrine of equitable contribution. The parties should research the law, and provide the law on equitable contribution to the trial judge. I believe that, in the absence of an assignment from Westfield Insurance to Morlan Enterprises, the law is clear: Morlan Enterprises has no legal basis for pursuing defense attorney fees and expenses from Owners Insurance.

---

defense. The plaintiffs recovered judgments that exhausted the limits of the first two insurers' policies.

The bishop then brought a bad faith action against all three insurers. The first two insurers assigned their cause of action against the third insurer for defense costs to the bishop and the plaintiffs. The third insurer claimed that "its failure to defend was not an actionable breach because the Bishop suffered no damages since other insurers provided a defense." 187 Cal.App.4th at 521, 115 Cal.Rptr.3d at 63. The California court rejected this theory because, "It is well established that an insurer that defends the insured is entitled to equitable contribution from a coinsurer that fails to defend." *Id.* at 523, 115 Cal.Rptr.3d 64. The California court allowed the bishop and plaintiffs to proceed with the cause of action for defense costs that had been assigned to them.

6