46 Cal.Rptr.3d 1 (2006)
141 Cal.App.4th 398
EMPLOYERS INSURANCE COMPANY OF WAUSAU, Plaintiff and Respondent,
v.
The TRAVELERS INDEMNITY COMPANY et al., Defendants and Appellants.
No. A110973.
Court of Appeal of California, First District, Division Three.
June 16, 2006.
*2 Bryan Morgan Barber, Larson & King, San Francisco, CA, for Plaintiff and Respondent.
John Morwick Ross, Cooper, White & Cooper, Walnut Creek, CA, Jane Karren Baker, Sinnott Dito Moura & Puebla, Stephen Randall, Cortner, McNaboe, et al., John Grayson Johnson, Sonnenschein Nath et al., San Francisco, CA, for Defendants and Appellants.
Certified for Partial Publication.[*]
SIGGINS, J.
Defendant insurers in this contribution action[1] challenge a declaratory judgment in favor of Employers Insurance Company of Wausau (Wausau) that requires them to contribute to the cost of defending environmental tort suits filed after their comprehensive settlements with their mutual insured. They also dispute the method the court used to apportion defense costs among the insurers. We hold the trial court correctly required defendants to contribute to defense costs under the principles articulated in Fireman's Fund Ins. Co. v. Maryland Casualty Co. (1998) 65 Cal.App.4th 1279, 77 Cal.Rptr.2d 296 (Fireman's Fund), and correctly apportioned defense costs.

BACKGROUND
The facts are not in dispute. The parties sequentially insured a succession of companies that allegedly released hazardous contaminants from a manufacturing plant in Willits, California. The Willits site was owned and operated by Remco Hydraulics, Inc. from approximately 1948 until 1968, when it was acquired by Stanray Corporation. Stanray was later acquired by Illinois Central Industries, Inc., which later changed its name to Whitman Corporation; Whitman, in turn subsequently merged with PepsiAmericas, Inc.[2]

The Jensen-Kelly Settlements and Releases

In 1997 and 1998 Whitman settled with a number of insurers, including defendants, to resolve disputed coverage of environmental claims raised in Jensen-Kelly Corporation, et al. v. Allianz Underwriters Insurance Company, et al. (1992) [Super. Ct., L.A. Cty. No. BC069018] (Jensen-Kelly). As part of the Jensen-Kelly settlements, Whitman released the defendant *3 insurers from any obligation to defend or indemnify it against past, present and future environmental actions and agreed to indemnify the settling carriers against any claims under their policies, including other insurers' claims for contribution.[3] In return, defendants paid Whitman an aggregate of approximately $24 million.

The Avila and Arlich Actions

Wausau's claim for contribution was triggered by two cases filed against Whitman. Avila, et al. v. Willits Environmental Remediation Trust, et al. (N.D.Cal., No. C-99-3941) (Avila) and Arlich, et al. v. Willits Environmental Remediation Trust, et al. (N.D.Cal., No. C-01-0266) (Arlich), were filed in August 1999 and January 2001, respectively. Several hundred plaintiffs sued Whitman and others for bodily injury and property damage due to chromium contamination that emanated from the Willits site between 1958 and the present.
Wausau was a primary general liability insurer of Whitman (then Stanray) for three years between January 1969 and January 1972. Each of the defendants also provided Whitman primary general liability insurance during the years contamination allegedly occurred. All of the policies contain a substantially similar duty to defend.

The Declaratory Relief Action: Wausau v. Travelers
Whitman tendered the defense of the Avila and Arlich actions to Wausau. Wausau agreed to participate in defending Whitman pursuant to a full reservation of its rights. It subsequently filed this action for declaratory relief and equitable contribution against the defendants to recover some of its costs of defense in Avila and Arlich.
After defendants' unsuccessful motion for summary judgment, the action was tried to the court on stipulated facts supplemented by documentary evidence. Defendants' primary contention was that the Jensen-Kelly settlement agreements with Whitman barred Wausau's claims for contribution.[4]
The court found Wausau was entitled to contribution under Fireman's Fund, supra, 65 Cal.App.4th at p. 1279, 77 Cal. Rptr.2d 296 and other cases that recognize a direct right of action in favor of an insurer for contribution against others who cover the same risk. The statement of decision explains: "[E]ach insurer has an individual right of equitable contribution. The principle of equity is not based on any right of subrogation to the rights of the insured, and is simply not the equivalent to `standing in the shoes' of the insured. Rather, the reciprocal contribution rights of primary co-insurers who have agreed to insure the same risk are based on the equitable principle that the burden of indemnifying or defending the insured with who[m] each has independently contracted should be borne by all of the insurance contractors together, with the loss equitably distributed among those who share liability for it in direct ratio to the proportion each insurer's coverage bears to the total coverage provided by all of the primary insurance policies. Naturally, the prior release of funds that do exhaust the amount of primary coverage actually available imposes a defining limitation of individual insurer responsibility. But, under *4 the facts of this case, this appears the primary limit to Plaintiff's claims against other co-insurers."
After moving unsuccessfully for a new trial or, alternatively, to vacate the judgment and enter a different judgment, defendants filed this timely appeal.

DISCUSSION

I. Standard of Review[**]

II. Fireman's Fund Governs Defendants' Contribution Responsibility

Is Wausau's right to equitable contribution for the cost of defending Arlich and Avila barred by defendants' settlements with their insureds (Whitman) in the Jensen-Kelly case? To answer that question, we look primarily to Fireman's Fund and consider the purpose, application and effect of the equitable contribution doctrine.
Where two or more insurers' policies potentially cover an insured's liability and one of them bears the defense burden alone, the insurer bearing that burden is entitled to equitable contribution from the non-defending carriers. (Fireman's Fund, supra, 65 Cal.App.4th at p. 1293, 77 Cal. Rptr.2d 296; Aerojet-General Corp. v. Transport Indemnity Co. (1997) 17 Cal.4th 38, 70, fn. 19, 70 Cal.Rptr.2d 118, 948 P.2d 909; Montrose Chemical Corp. v. Admiral Ins. Co. (1995) 10 Cal.4th 645, 687, 42 Cal.Rptr.2d 324, 913 P.2d 878; see Civ. Code, § 1432.) "Equitable contribution permits reimbursement to the insurer that paid on the loss for the excess it paid over its proportionate share of the obligation, on the theory that the debt it paid was equally and concurrently owed by the other insurers and should be shared by them pro rata in proportion to their respective coverage of the risk. The purpose of this rule of equity is to accomplish substantial justice by equalizing the common burden shared by coinsurers, and to prevent one insurer from profiting at the expense of others." (Fireman's Fund, supra, at p. 1293, 77 Cal.Rptr.2d 296.)
Fireman's Fund considered the effect of one insurer's settlement and release with its insured on its obligation to contribute to the costs of the insured's defense incurred by another insurer. The insurer from whom contribution was sought claimed that its settlement and release extinguished any claims by other insurers for equitable contribution. (65 Cal. App.4th at pp. 1287-1289, 77 Cal.Rptr.2d 296.) The court rejected the notion that an insurer could avoid contribution to other insurers by settling with the policyholder. "This right of equitable contribution belongs to each insurer individually. It is not based on any right of subrogation to the rights of the insured, and is not equivalent to `"standing in the shoes"' of the insured. [Citations.] Instead, the reciprocal contribution rights of coinsurers who insure the same risk are based on the equitable principle that the burden of indemnifying or defending the insured with whom each has independently contracted should be borne by all the insurance carriers together, with the loss equitably distributed among those who share liability for it in direct ration to the proportion each insurer's coverage bears to the total coverage provided by all the insurance policies. . . . [¶] . . . [t]he right to equitable contribution exists independently of the rights of the insured. It is predicated on the commonsense principle that where *5 multiple insurers or indemnitors share equal contractual liability for the primary indemnification of a loss or the discharge of an obligation, the selection of which indemnitor is to bear the loss should not be left to the often arbitrary choice of the loss claimant, and no indemnitor should have any incentive to avoid paying a just claim in the hope the claimant will obtain full payment from another coindemnitor." (Id. at pp. 1294-1295, 77 Cal.Rptr.2d 296; see also Centennial, supra, 88 Cal.App.4th at pp. 114-115, 105 Cal.Rptr.2d 559 [insurers' obligations for contribution to other insurers are entirely separate from their obligations to their insured].) Thus, the well-settled rule is that an insurer's obligation to contribute to another insurer's defense or indemnification of a common insured arises independently and is separate from any contractual obligation owed to their insured. (Fireman's Fund, supra, at p. 1295, 77 Cal.Rptr.2d 296; see also Centennial, supra, at pp. 114-115, 105 Cal. Rptr.2d 559.) Defendants here argue that notwithstanding this rule, they should not be obligated to contribute to Wausau's defense of the Avila and Arlich cases because they bought back their coverage from Whitman for $24 million. This, they argue, insulates them from application of the rule announced in Fireman's Fund.
Defendants attempt to distinguish Fireman's Fund on the ground that they settled with Whitman before the Avila and Arlich actions were filed, while the settlement in Fireman's Fund was reached only after the underlying suit commenced. It is a distinction without a difference. Neither the language nor reasoning of Fireman's Fund suggests that a settling insurer is only responsible for contribution to another for costs of defending cases pending at the time of settlement. Defendants also suggest that, unlike Fireman's Fund, they never had a contemporaneous "equal obligation" with Wausau to their insured. But defendants' obligation to their insured arose long ago: long before the Jensen-Kelly releases and the Avila and Arlich actions were filed. (Fireman's Fund, supra, 65 Cal.App.4th at p. 1304, 77 Cal. Rptr.2d 296 ["Primary coverage provides immediate coverage upon the `occurrence' of a `loss' or the `happening' of an `event' giving rise to liability"]; see generally Montrose Chemical Corp. v. Admiral Ins. Co., supra, 10 Cal.4th at p. 645, 42 Cal. Rptr.2d 324, 913 P.2d 878 [analyzing "trigger of coverage" question in context of continuous or progressive injury from environmental contamination].) At the time of loss, each insurer had a potential obligation to defend and indemnify Whitman against claims that might arise from a toxic discharge. We are not persuaded that defendants' equitable obligation to share the cost of that defense depends on whether they settled with their insured before, or after, the Avila and Arlich suits were filed.[5]
Defendants' attempt to characterize Wausau as akin to a third-party beneficiary whose rights were terminated by their settlements and release with their insured is also unpersuasive. The right to equitable contribution is grounded not in contract, but in equity. "`As a matter of equity, insurers of the "same risk" may sue each other for contribution. [Citations.] This right is not a matter of contract, but flows "`from equitable principles *6 designed to accomplish ultimate justice in the bearing of a specific burden.'"'" (Fireman's Fund, supra, 65 Cal.App.4th at pp. 1294-1295, 77 Cal.Rptr.2d 296.) Wausau's right to contribution is a direct right independent of Whitman's contractual rights under defendant's insurance policies (id. at pp. 1301-1302, 77 Cal.Rptr.2d 296), and is not subject to third party beneficiary principles.
Defendants next contend that their settlement agreements with Whitman modified their insurance policies to reflect a "mutual intention" that their coverages were exhausted.[6] Accordingly, they maintain, they have no further obligation to contribute to their insured's defense. But merely saying a policy is exhausted does not make it so. While Whitman and the settling insurers were free to agree as between themselves to "deem" their policy limits "exhausted," just as they were free to settle their coverage dispute between themselves, there is no evidence that the settlements actually exhausted the coverage available under the policies; to the contrary, defendants stipulated before trial that they would not assert that any of the relevant policy limits were exhausted.
Defendants contend that applying Fireman's Fund here will contravene public policy by discouraging insurers from settling with their insureds. But balanced against the societal interest in encouraging settlements are other public policy interests and the equitable concerns underlying the well-established rule of contribution between insurers. As stated in Fireman's Fund "the reciprocal contribution rights of coinsurers who insure the same risk are based on the equitable principle that the burden of indemnifying or defending the insured with whom each has independently contracted should be borne by all the insurance carriers together, with the loss equitably distributed among those who share liability for it in direct ratio to the proportion each insurer's coverage bears to the total coverage provided by all the insurance polic[i]es." (Fireman's Fund, supra, 65 Cal.App.4th at p. 1294, 77 Cal. Rptr.2d 296.) Defendants provide no authority for their ipse dixit claim that policies favoring the encouragement of settlements militate a rule that would permit a coinsurer to evade its share of the defense burden by separately settling with its insured. Nor is there evidence before us that the Fireman's Fund rule in fact discourages settlement. Here, defendants settled with their insurer and anticipated the possibility they could be held liable for contribution. They included in the settlement agreements provisions that require Whitman to indemnify them for such claims. The trial court considered the import of the settlements between defendants and their mutual insured upon this claim for contribution, and in the circumstances determined that contribution would be allowed to "the amount of primary coverage" that was available under the policies. Under Fireman's Fund and Centennial, that is exactly what the trial court was required to do. We are not persuaded to create an exception to the rule in this case.

*7 III.-V.[***]

DISPOSITION
The judgment is affirmed.
McGUINESS, P.J., and PARRILLI, J., concur.
NOTES
[*] Pursuant to California Rules of Court, rules 976 and 976.1, this opinion is certified for publication with the exception of parts I, III, IV and V.
[1] The Travelers Indemnity Company (Travelers), The Continental Insurance Company, Northwestern National Insurance Company of Milwaukee, Wisconsin and National Union Fire Insurance Company of Pittsburgh.
[2] For simplicity, we adopt the parties' convention and refer to these various entities jointly as "Whitman."
[3] Defendants are indemnified by Whitman against Wausau's claims in this action, although the indemnity for some of the defendant insurers is subject to a maximum cap.
[4] They also argued, unsuccessfully, that Wausau's claims were barred by late notice, but they do not raise this contention on appeal.
[**] See footnote *, ante.
[5] Moreover, the settlement agreements reflect that the policies were modified, but not rescinded by any settlement. Except as modified by the agreement, the policies "remain in effect."
[6] Specifically, they rely on language from the settlement agreements reciting that "The purpose of this Agreement is . . . to terminate and exhaust all coverage potentially available to the Insureds . . . ."; that "It is agreed that . . . all pertinent limits of liability under the Policies listed in Exhibit A hereto . . . are hereby exhausted for Environmental Damage Claims"; and that "Upon execution of this Agreement, Insurers shall have no further duties or obligations based upon, arising out of or related in any way to Environmental Damage Claims under the Policies. . . ."
[***] See footnote *, ante.