41 A.3d 586 (2012)
425 N.J. Super. 305
POTOMAC INSURANCE COMPANY OF ILLINOIS, by its transferee, ONEBEACON INSURANCE COMPANY, Plaintiff-Respondent,
v.
PENNSYLVANIA MANUFACTURERS' ASSOCIATION INSURANCE COMPANY, Defendant-Appellant, and
Newark Insurance Company and Royal Insurance Company, Defendants.
No. A-3164-09T2
Superior Court of New Jersey, Appellate Division.
Argued Telephonically November 1, 2011.
Decided April 13, 2012.
*587 James P. Lisovicz argued the cause for appellant (Coughlin Duffy, LLP, attorneys; Mr. Lisovicz, of counsel and on the briefs; Timothy P. Smith and Joseph C. Amoroso, Morristown, on the briefs).
Elliott Abrutyn, Livingston, argued the cause for respondent (Morgan Melhuish Abrutyn, attorneys; Mr. Abrutyn, of counsel and on the brief; James L. Melhuish, Livingston, on the brief).
Before Judges LIHOTZ, WAUGH, and ST. JOHN.
The opinion of the court was delivered by
WAUGH, J.A.D.
Defendant Pennsylvania Manufacturers' Association Insurance Company (Pennsylvania) appeals from the Law Division's amended judgment in favor of plaintiff OneBeacon Insurance Company (OneBeacon).[1] The judgment included *588 $84,618.76 to reimburse OneBeacon for Pennsylvania's share of defense costs incurred by OneBeacon in defending Aristone, Inc. (Aristone), in an underlying negligence action in which Aristone was a defendant. It also included an award of $74,308.97 in counsel fees to OneBeacon as the successful litigant in this action, pursuant to principles contained in Rule 4:42-9(a)(6). We affirm the judgment for the costs of defense in the underlying action, but reverse as to the counsel fees in this action.

I.
We discern the following facts and procedural history from the record on appeal.

A.
The Evesham Township Board of Education (Evesham) filed the underlying action in December 2001, alleging that several defendants were responsible for the negligent design and construction of one of its middle schools. Evesham's complaint alleged, in part, that there was continuous damage from water infiltration from the time the construction was completed in 1993 until the time its action was filed. Aristone, the general contractor for the project, was named as a defendant.
At different times between 1993 and 2003, Aristone was insured under standard commercial general liability policies issued by four carriers: Selective Way Insurance Company (Selective Way), OneBeacon, Pennsylvania, and Royal Insurance Company (Royal), each with coverage limits of $1 million. Pennsylvania insured Aristone through two one-year policies from 1993 to 1995. OneBeacon insured Aristone through a one-year policy for 1997 and for 1998.
After Evesham filed suit, Selective Way assumed Aristone's defense and appointed an attorney to defend Aristone. OneBeacon subsequently joined with Selective Way in providing Aristone's defense, and appointed the same attorney to defend Aristone on its behalf.
In October 2002, Pennsylvania disclaimed any obligation to defend or indemnify Aristone, asserting that Evesham's complaint either failed to state an occurrence under Aristone's policy or, if it did, that the claim was barred by the policy's business risk exclusion. Royal also disclaimed coverage under its policy.
The roof for the Evesham school was constructed by Ertle Roofing and Sheet Metal Works (Ertle), one of Aristone's subcontractors. The contract between Aristone and Ertle required Ertle to indemnify and hold Aristone harmless "against any claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from" Ertle's performance. Aristone filed a third-party complaint against Ertle in the underlying action, seeking indemnification under the terms of their contract.
Ertle was insured by Camden Fire Insurance Association (Camden), an affiliate of OneBeacon. In August 2003, Camden denied coverage to Aristone as an additional insured under Ertle's policy with Camden, contending that Ertle had not named Aristone as an additional insured as required by Camden's policy.
In June 2004, Aristone filed a declaratory judgment action against Pennsylvania and Royal, but not Camden. The complaint was signed by the attorney appointed by OneBeacon and Selective Way to represent Aristone. In November 2006, Aristone and Pennsylvania agreed to submit their dispute to arbitration before a *589 retired judge.[2] In December 2006, the retired judge ruled that Pennsylvania was obligated to provide Aristone with coverage and to participate in the cost of the defense. He further determined that the resulting costs would be allocated pursuant to the Carter-Wallace formula.[3]
In February 2007, Aristone and Pennsylvania agreed to a $150,000 settlement. Pennsylvania's attorney drafted the release and submitted it to Aristone's appointed attorney for review. He requested changes that will be discussed in more detail below. The release was executed on March 2, 2007.
Paragraph 1.1 of the release defines Aristone as including any and all persons, including corporations, "insured or claiming, or which in the future may claim, any right[,] title or interest in or under the [Pennsylvania] Policy." The release applied to all claims, and potential claims, that Aristone might have had against Pennsylvania, and specifically the following claims:
All claims against [Pennsylvania] for coverage arising out of the construction and alleged damages to the D[e]Masi School, including all damages alleged in the Evesham Claim. All claims that have been brought against [Pennsylvania] or could have been brought against [Pennsylvania] in [the coverage] action [brought by Aristone].
Paragraph 5 of the release, entitled "Who is Bound," provides that in addition to Aristone, "[a]nyone who succeeds to [Aristone's] rights and responsibilities as defined by law is also bound." Paragraph 10 of the release, entitled "No Rights Conferred Upon Non-Parties," states:
This Agreement is intended to confer rights and benefits only on the signatories hereto and is not intended to confer any right or benefit upon any other person. No person other than the signatories hereto shall have any legally-enforceable right under this agreement.
Paragraph 16 and 16.1, involving indemnification, provide:
On condition precedent that [Pennsylvania] make the payments as described. . . above, Aristone agrees to defend and indemnify [Pennsylvania] against any claims, defense [sic] arising out of the Evesham Claim or the coverage action exclusive of claims by an insurance carrier as a claimant or as a true party in interest to a claim.
If the underlying settlement of the Evesham action should fail after the execution of this agreement by the parties, [Pennsylvania] shall continue to have an obligation consistent with the order of the arbitrator dated December 20, 2006 subject to all applicable limitations. In such event, [Pennsylvania] shall be entitled to a $150,000 . . . credit towards its total defense and indemnity obligation.
In March 2007, Evesham and Aristone settled the underlying action for $700,000. Aristone's third-party action against Ertle was not included in the settlement. However, in October 2008, in the context of an interlocutory appeal by Ertle, we held that Aristone's third-party action against Ertle was barred by the applicable statute of limitations. Evesham Twp. Bd. of Educ. v. Vitetta, No. A-4196-06, 2008 WL 4735883 (App.Div. Oct. 30, 2008).

B.
In June 2007, OneBeacon sent a demand letter to Pennsylvania and Royal, seeking reimbursement for their respective shares *590 of the defense costs and expenses incurred in defending the underlying action. OneBeacon sought $105,773.70 from Pennsylvania, which it asserted was twenty percent of the overall defense costs in the underlying action. Neither Pennsylvania nor Royal agreed to reimburse OneBeacon in response to the demand letter.
In July 2007, OneBeacon filed suit against Pennsylvania and Royal, seeking reimbursement for their respective shares of the defense costs in the underlying action, as well as attorney's fees for the action.[4] Pennsylvania and Royal filed answers denying liability. In one of its affirmative defenses, Pennsylvania asserted that OneBeacon's claim was barred by its earlier settlement with Aristone.
In February 2008, OneBeacon filed a motion for summary judgment. Pennsylvania and Royal filed cross-motions for summary judgment in March. In support of its motion, OneBeacon submitted a certification from Matthew Adler, one of its claims consultants. Adler asserted that the release Aristone gave Pennsylvania as part of their settlement was not intended to release Pennsylvania from its obligation to reimburse OneBeacon for its proportionate share of the defense costs in the underlying action. Those costs, according to Adler, were paid by OneBeacon and Selective Way, rather than Aristone, and were excluded from the release. Adler claimed that OneBeacon and Selective Way shared the entire cost of the defense of Aristone in the underlying action, which totaled $528,868.54.
The motions were argued in April 2008. On June 12, the motion judge issued a written decision and entered orders denying all of the motions.[5] In denying the motions, the judge found that questions regarding the scope of the settlement between Aristone and Pennsylvania created issues of material fact, and that Adler's certification was admissible to shed light on the parties' intent:
[T]here are obvious questions about the scope of the settlement which can only be resolved through a hearing to determine the intent of the parties at settlement. Testimony elicited to ascertain the intent of the parties to a contract is not parole evidence. Parole evidence, then, is not used to alter a contract, but to explain the real intention of the parties.
. . . .
... These statements are not parole evidence to modify the agreement. Rather, the certification is to clarify the intent of the contracting parties and especially the release language in question. That [Pennsylvania has] a different take on the language raises fact questions that the court cannot resolve through interpretation of the language of the contract.
[(Internal citations omitted.)]
We denied Pennsylvania's motion for leave to appeal.
At a deposition taken in October 2008, Adler testified that he did not negotiate the release and that his understanding of its intent came solely from the attorney appointed to represent Aristone. He had no personal knowledge concerning the release, and had not seen a copy at the time he signed his certification. Pennsylvania's attorney testified at his January 2009 deposition that the appointed attorney never drew a distinction between indemnity and defense costs when discussing settlement of Aristone's declaratory judgment action.
*591 In January 2009, Pennsylvania filed another motion for summary judgment, which was argued in March. The motion judge issued an order and a written opinion a few days later, denying the motion. The motion judge again addressed the release and Adler's certification:
[T]he release signed by Aristone had two revisions by [the attorney appointed for Aristone], that were apparently acceptable to [Pennsylvania], which OneBeacon contends carved out the litigation involved here. [Pennsylvania] has a different take on this language and their intent when agreeing. Taking all of this together, material issues of fact remain regarding the parties['] intention in executing the Release. A reasonable fact-finder could conclude that the express limitation of the indemnification provisions reveals that it was not the intent of the Release to release [Pennsylvania's] obligation to OneBeacon for [Pennsylvania's] share of the defense costs. . . .
[Pennsylvania] argues that the court erroneously relied on Mr. Adler's certification in its prior ruling. [Pennsylvania] argues that the Adler certification. . . was not admissible pursuant to the parol evidence rule because it was not a prior contemporaneous document. [Pennsylvania] also argues that even if the Adler Certification is not barred by the parol evidence rule, it is inadmissible because Mr. Adler lacked personal knowledge regarding the drafting and negotiation of the Release and the intent of the parties. . . .
The court does not need to rehash its discussion of parol evidence. Suffice it to say, testimony elicited to ascertain the intent of the parties to a contract is not parol evidence. Therefore, the court properly considered Mr. Adler's certification at the time of its prior ruling.
. . . .
. . . OneBeacon argues that Mr. Adler has personal knowledge of the intent of OneBeacon in its agreement for resolution of the Evesham claim against Aristone and resolution of OneBeacon's defense obligations to Aristone.... Given his knowledge of OneBeacon's intent and of the authority communicated for the negotiations, the court continues to find that factual issues about the parties' intent are put in play....
[(Internal citations omitted.)]
In September 2009, the motion judge denied Pennsylvania's motion to preclude testimony relating to the intent of the release from Aristone to Pennsylvania.

C.
Another judge tried the case without a jury in October 2009. The facts that follow, which address the settlement of Aristone's action against Pennsylvania, the underlying action, and the issue of contribution from Ertle or its insurer, were developed at trial.
In November 2006, Aristone demanded $270,000 from Pennsylvania to settle the declaratory action. In January 2007, Aristone reduced its demand to approximately $200,000. In response, Pennsylvania offered to pay $100,000. It ultimately agreed to settle for $150,000.
Philip Salamone, the Pennsylvania claims manager who negotiated the settlement with the attorney appointed, testified that Pennsylvania's offer was intended to include settlement of Pennsylvania's indemnity and defense obligation to Aristone. Pennsylvania's attorney, who prepared the initial draft of the release on behalf of Pennsylvania, testified that he was seeking a release of all claims, defense and indemnity, that could be brought against Pennsylvania under Aristone's policy. According to Pennsylvania's attorney, he also drafted the definition of "Aristone" *592 in paragraph 1.1 of the release to make it clear that the claims of "anyone succeeding or claiming to succeed to [Aristone's] rights under the policy" would be included in the release.
The attorney appointed to represent Aristone, however, made changes to the language proposed by Pennsylvania's attorney. In paragraph 5, governing who was bound by the release, he eliminated a reference to "any insurance carrier" succeeding to Aristone's rights and responsibilities, and substituted "as defined by law." He did so because he did not want there to be any doubt that the release was only between Pennsylvania and Aristone. Pennsylvania's attorney testified that he did not object to the phrase "as defined by law" because he thought it was broader protection for Pennsylvania than the original language.
The attorney appointed to represent Aristone also eliminated proposed language in paragraph 16, which stated that Aristone agreed to defend and indemnify Pennsylvania against any claims "for costs of defense" arising out of the underlying action.[6] Pennsylvania's attorney testified that he had originally included the language to ensure that, if there were further litigation, Aristone would defend and indemnify Pennsylvania. According to Pennsylvania's attorney, the attorney appointed to represent Aristone told him that he added the phrase "exclusive of claims by an insurance carrier as a claimant or as a true party in interest to a claim" to paragraph 16 because the underlying action had not yet settled and, if it did not settle, he did not want Aristone to have to indemnify any insurers in the event of further litigation.
The attorney appointed for Aristone testified that he made it clear to Pennsylvania's representatives that no carrier, including OneBeacon, would be a party to the release. His overall objective was to limit the agreement to just Pennsylvania and Aristone.
According to the appointed attorney, the $150,000 settlement with Pennsylvania was sought to "plug" the hole between the proposed settlement of the underlying action for $700,000 and the $550,000 that had been already been raised from the other carriers. Aristone had not incurred any defense costs, which were incurred solely by its insurers.
Salamone testified to his understanding that the settlement included defense costs incurred by OneBeacon. He asserted that he would not have authorized a $150,000 settlement had those defense costs not been included. The attorney appointed to represent Aristone conceded that Salamone told him that the settlement with Aristone was a "complete walk-away" for Pennsylvania. Nevertheless, he claimed that he told either Salamone or Pennsylvania's attorney that OneBeacon was not a party to the release. Pennsylvania's attorney testified that the appointed attorney never advised him that the $150,000 was for indemnity only and that OneBeacon would then proceed against Pennsylvania for the defense costs, nor did he otherwise indicate that the settlement was only on behalf of Aristone.
Adler testified that he had directed the attorney appointed for Aristone to seek a settlement of the underlying action in which OneBeacon would pay either $91,000 for its liability share, with OneBeacon absorbing the defense costs, or $150,000 with OneBeacon reserving its right to recover *593 the defense costs from other insurers. The eventual settlement was for $700,000, of which OneBeacon paid $150,000. Selective Way and Royal paid $260,000 and $140,000, respectively. The final $150,000 came from Pennsylvania's settlement with Aristone.
The appointed attorney testified that the issue of the recoverability of OneBeacon's defense costs was discussed throughout the course of the negotiations concerning the settlement of the underlying action, in which Pennsylvania participated. Adler testified that the appointed attorney told him that the settlement in the underlying settlement was reached with the understanding that OneBeacon would retain its right to seek defense costs from the other carriers.
The attorney appointed to represent Aristone also testified that he attempted to obtain coverage for Aristone as an additional insured from Camden under its policy, but Camden denied coverage. According to Adler, Aristone was not entitled to such coverage because Aristone had not been named as an additional insured under that policy. That point was conceded by Pennsylvania.
However, Pennsylvania's attorney testified that OneBeacon could have recovered from Ertle based on its contractual obligation to indemnify Aristone, which would have been a covered claim under another provision of Camden's policy. Adler countered that because the claims against Ertle had been dismissed on statute of limitation grounds in the third-party action, there was no viable claim against Ertle under any theory.[7]
At the conclusion of the trial, the judge rendered an oral decision in favor of OneBeacon. In his decision, the trial judge concluded that "Aristone had no right to. . . release [Pennsylvania] from any obligation that it may have, as a matter of law." He relied, in part, on the fact that the release was drafted initially by Pennsylvania's attorney, who did not object to the changes sought by the attorney appointed by OneBeacon, which "clearly reflected" his intent to preclude release of OneBeacon's right to seek contribution.
The judge found that the attorney appointed was acting only on behalf of Aristone in the declaratory judgment action. In addition, he concluded that Adler did not intend that OneBeacon be bound by the release, and that there was no other evidence that OneBeacon intended to release its rights to seek contribution. The judge found it significant that Pennsylvania, which he characterized as a "sophisticated commercial entity," did not insist that OneBeacon sign the release, adding:
I find as a fact that [Pennsylvania] knew that OneBeacon would not sign, that [Pennsylvania] hoped to use Aristone's signature as a basis for an argument that OneBeacon is bound by its insured's release of any claim for defense costs to include OneBeacon's expenses. . . .
. . . OneBeacon . . . didn't participate in any way except by paying the legal fees of [the attorney appointed] to represent. . . Aristone. . . .
. . . I . . . find that there was no meeting of the minds between OneBeacon and [Pennsylvania]. That, while [Pennsylvania] may have intended that the document wipe out any rights of OneBeacon, OneBeacon never had any similar intent or any similar expectation....
The judge noted in particular that paragraph 16 of the release specifically excluded claims by an insurance carrier from the provisions of the release.
*594 The trial judge determined that Pennsylvania owed OneBeacon $84,618 as its share of the costs incurred in defending Aristone in the underlying action. The motion judge subsequently granted OneBeacon's application for counsel fees for this action pursuant to Rule 4:42-9(a)(6). After noting that the matter had a "long procedural history," the judge added:
Here, because the underlying problem arose from a disclaimer of coverage the policy reason for the prior assessment of fees still applies in this case. The obvious purpose is to discourage unwanted disclaimers that then shift the cost as happened here to other insurers. After all the consequence here for OneBeacon was that it paid for things that [Pennsylvania] should have paid for. In that regard OneBeacon's claim is equitable and obviously [it] did not have a policy with [Pennsylvania], so the Court feels that because this arose from a disclaimer of coverage the expressed language of the rule does apply . . . as [does] the policy reason for the rule. . . .
On January 29, 2010, the judge entered an amended order awarding OneBeacon $84,618.76 as reimbursement for defense costs in the underlying action, $12,430.51 in prejudgment interest, and $74,308.97 in counsel fees for this action, for a total of $171,358.24. This appeal followed.

II.
Pennsylvania's principal argument on appeal is that both the motion and trial judges erred because New Jersey does not permit an insurer to obtain contribution from a settling insurer under the apportionment doctrine enunciated in Owens-Illinois, Inc. v. United Insurance Co., 138 N.J. 437, 650 A.2d 974 (1994), and Carter-Wallace, Inc. v. Admiral Insurance Co., 154 N.J. 312, 712 A.2d 1116 (1998). In addition, Pennsylvania claims that OneBeacon cannot recover because Pennsylvania's settlement with Aristone included the counsel fees in question and precluded any further claim by OneBeacon. Finally, Pennsylvania argues that the motion judge (1) improperly relied on Adler's certification in denying summary judgment because it was not based on personal knowledge, (2) failed adequately to support her calculation of the counsel fee award for this action, and (3) improperly awarded counsel fees to OneBeacon in this action.

A.
It is well-established that our review of a judge's conclusions of law is plenary. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995) ("A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference."). Consequently, in the context of a motion for summary judgment, we apply the same standard governing the trial court under Rule 4:46-2(c). Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 539-40, 666 A.2d 146 (1995); Chance v. McCann, 405 N.J.Super. 547, 563, 966 A.2d 29 (App.Div. 2009) (citing Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46, 916 A.2d 440 (2007)).
When reviewing a decision resulting from a bench trial, however, "[t]he general rule is that [factual] findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12, 713 A.2d 390 (1998) (citing Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974)). We do not disturb the factual findings of the trial judge unless we are "`convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as *595 to offend the interests of justice.'" Id. at 412, 713 A.2d 390 (quoting Rova Farms, supra, 65 N.J. at 484, 323 A.2d 495); see also Beck v. Beck, 86 N.J. 480, 496, 432 A.2d 63 (1981).

B.
We turn first to Pennsylvania's argument that New Jersey law does not recognize a defending insurer's right to seek contribution directly from another carrier that had a duty to defend the common insured.
In Owens-Illinois, supra, 138 N.J. at 478-79, 650 A.2d 974, the New Jersey Supreme Court held "that when progressive indivisible injury or damage results from exposure to injurious conditions . . . courts may reasonably treat the progressive injury or damage as an occurrence," or a continuous trigger, within each year of a commercial general liability policy during which exposure occurs for purposes of activating the insurers' obligation. When multiple policies of insurance are implicated under the continuous-trigger theory, losses for indemnity and defense costs are to be allocated among the companies involved, subject to policy limits and exclusions. Id. at 479, 650 A.2d 974. The Court rejected joint and several allocation in favor of prorata allocation on the ground that collapsing the continuous injury into one year, as the former method does, was not consistent with the direction of New Jersey law. Id. at 460-70, 650 A.2d 974. This theory of liability applies to progressive environmental property damage. Carter-Wallace, supra, 154 N.J. at 321, 712 A.2d 1116.
In Marshall v. Raritan Valley Disposal, 398 N.J.Super. 168, 177, 940 A.2d 315 (App.Div.2008), we held that an insurer that has provided coverage to its insured may pursue an action against a nonparticipating co-primary insurer for contribution for the costs of defense and indemnification of their common insured.
An insurer that has provided coverage to its insured also has a sufficient financial interest in obtaining a declaration that another insurer provided coverage for the same occurrence to have standing to pursue a coverage action against the other insurer for contribution to the costs of defense and indemnification of their common insured.
[Ibid. (citing Cosmopolitan Mut. Ins. Co. v. Cont'l Cas. Co., 28 N.J. 554, 147 A.2d 529 (1959); Jefferson Ins. Co. v. Health Care Ins. Exch., 247 N.J.Super. 241, 245-48, 588 A.2d 1275 (App.Div. 1991)).]
We further held that, "[a]lthough an insured and its insurer both have standing to pursue coverage actions against another insurer that has issued a policy that allegedly provides coverage for the same occurrence, this does not mean that their claims are identical." Ibid.
However, the question of whether one insurer may pursue another insurer for contribution for defense costs when the second insurer has already settled with the common insured does not appear to have been addressed in New Jersey. The question has, however, been addressed on a number of occasions in California. The leading case is Fireman's Fund Insurance Co. v. Maryland Casualty Co., 65 Cal. App.4th 1279, 77 Cal.Rptr.2d 296, 309 (1998), where the court recognized a direct right of action between co-insurers of the same risk. It added:
We conclude that where two or more insurers independently provide primary insurance on the same risk for which they are both liable for any loss to the same insured, the insurance carrier who pays the loss or defends the lawsuit against the insured is entitled to equitable contribution from the other insurer *596 or insurers, without regard to principles of equitable subrogation. As a corollary to this principle, we hold that one insurer's settlement with the insured is not a bar to a separate action against that insurer by the other insurer or insurers for equitable contribution or indemnity. [Id. at 301.]
In that case, the defendant insurer settled the common insured's breach of contract action against it with respect to the tender of a defense and coverage. Id. at 300. The plaintiff co-insurer then brought an action against the defendant insurer, seeking reimbursement, indemnification, and contribution for the defendant's pro rata share of the costs the plaintiff incurred in the defense and settlement of the underlying construction defect action brought by the common insured. Ibid. The court rejected the defendant's claim that an insurer could avoid contribution to other insurers by settling with the insured, holding that a settling insurer remains liable for contribution to those insurers who have already paid for the insured's defense. Id. at 304-05.
The court explained its reasoning as follows:
Equitable contribution is entirely different. It is the right to recover, not from the party primarily liable for the loss, but from a co-obligor who shares such liability with the party seeking contribution. In the insurance context, the right to contribution arises when several insurers are obligated to indemnify or defend the same loss or claim, and one insurer has paid more than its share of the loss or defended the action without any participation by the others. Where multiple insurance carriers insure the same insured and cover the same risk, each insurer has independent standing to assert a cause of action against its coinsurers for equitable contribution when it has undertaken the defense or indemnification of the common insured. Equitable contribution permits reimbursement to the insurer that paid on the loss for the excess it paid over its proportionate share of the obligation, on the theory that the debt it paid was equally and concurrently owed by the other insurers and should be shared by them pro rata in proportion to their respective coverage of the risk. The purpose of this rule of equity is to accomplish substantial justice by equalizing the common burden shared by coinsurers, and to prevent one insurer from profiting at the expense of others.
This right of equitable contribution belongs to each insurer individually. It is not based on any right of subrogation to the rights of the insured, and is not equivalent to "`standing in the shoes'" of the insured. Instead, the reciprocal contribution rights of coinsurers who insure the same risk are based on the equitable principle that the burden of indemnifying or defending the insured with whom each has independently contracted should be borne by all the insurance carriers together, with the loss equitably distributed among those who share liability for it in direct ratio to the proportion each insurer's coverage bears to the total coverage provided by all the insurance polices. "As a matter of equity, insurers of the `same risk' may sue each other for contribution. . . . This right is not a matter of contract, but flows `"from equitable principles designed to accomplish ultimate justice in the bearing of a specific burden."' . . . The idea is that the insurers are `equally bound,' so therefore they `all should contribute to the payment.' . . ."
Unlike subrogation, the right to equitable contribution exists independently of the rights of the insured. It is predicated *597 on the commonsense principle that where multiple insurers or indemnitors share equal contractual liability for the primary indemnification of a loss or the discharge of an obligation, the selection of which indemnitor is to bear the loss should not be left to the often arbitrary choice of the loss claimant, and no indemnitor should have any incentive to avoid paying a just claim in the hope the claimant will obtain full payment from another coindemnitor. Equitable contribution thus assumes the existence of two or more valid contracts of insurance covering the particular risk of loss and the particular casualty in question. The fact that several insurance policies may cover the same risk does not increase the insured's right to recover for the loss, or give the insured the right to recover more than once. Rather, the insured's right of recovery is restricted to the actual amount of the loss. Hence, where there are several policies of insurance on the same risk and the insured has recovered the full amount of its loss from one or more, but not all, of the insurance carriers, the insured has no further rights against the insurers who have not contributed to its recovery. Similarly, the liability of the remaining insurers to the insured ceases, even if they have done nothing to indemnify or defend the insured. They remain liable, however, for contribution to those insurers who have already paid on the loss or for the insured's defense.
[Id. at 303-05 (internal citations and footnotes omitted).]
See also Emp'rs Ins. Co. of Wausau v. Travelers Indem. Co., 141 Cal.App.4th 398, 46 Cal.Rptr.3d 1, 5, rev. denied, 2006 Cal. LEXIS 14166 (Oct. 11, 2006); Certain Underwriters at Lloyd's London & Excess Ins. Co. v. Mass. Bonding & Ins. Co., 235 Or.App. 99, 230 P.3d 103, 113 (the defendant insurers' settlements with the common insured did not operate to extinguish the plaintiff insurers' right to equitable contribution for defense costs in the underlying action that were paid prior to the settlement), rev. denied, 349 Or. 173, 243 P.3d 468 (2010).
The equitable principles outlined in Fireman's Fund are consistent with our holding in Marshall and the Supreme Court's approach to pro-rata sharing of defense costs in Owens-Illinois. We reject Pennsylvania's assertion that California law is inconsistent with New Jersey law. Although California does take a different approach to pro-rata allocation, see Aerojet-Gen. Corp. v. Transp. Indem. Co., 17 Cal.4th 38, 70 Cal.Rptr.2d 118, 948 P.2d 909, 930 n. 22, 931 n. 23 (1997), the overall similarities in approach outweigh the differences. The California Supreme Court does not differ with New Jersey law with respect to whether defense costs may be allocated among insurers. Id., 70 Cal. Rptr.2d 118, 948 P.2d at 930 (recognizing that "insurers may be required to make an equitable contribution to defense costs among themselves").
Pennsylvania's reliance on Childs v. New Jersey Manufacturers Insurance Co., 108 N.J. 506, 515, 531 A.2d 723 (1987), in which the Supreme Court questioned whether a nonsettling uninsured motorist carrier could obtain contribution from another uninsured motorist carrier that had settled for less than its pro-rata share, is misplaced. Childs involved the application of "other insurance" clauses, which are not at issue here. In continuous-trigger cases, such as this one, successive rather than concurrent policies are generally at issue. Carter-Wallace, supra, 154 N.J. at 322, 712 A.2d 1116; Owens-Illinois, supra, 138 N.J. at 470-71, 650 A.2d 974.
Consequently, we hold that Pennsylvania's settlement with Aristone was not, in *598 and of itself, a bar to OneBeacon's subsequent suit against it for contribution to defense costs.

C.
Pennsylvania next argues that, even if OneBeacon had a legally cognizable, separate right to seek contribution, it was barred from filing the present action by the release resulting from the settlement between it and Aristone. It further argues that the motion judge should have reached that conclusion on summary judgment, without the requirement of a trial.
Because OneBeacon had an independent, rather than a derivative, right to contribution, Aristone's release of its rights, like the settlement itself, did not, by itself, extinguish OneBeacon's right to seek contribution. Pennsylvania, however, also contends that OneBeacon was bound by the release because of its very broad language and because OneBeacon funded Aristone's declaratory judgment action against Pennsylvania, which was pursued through the attorney OneBeacon appointed to represent Aristone.
We agree with the motion judge's conclusion that the import of the release was an issue not amenable to determination on summary judgment. The language of the release was sufficiently broad to allow for two interpretations, one favorable to Pennsylvania and the other favorable to OneBeacon. A contract is ambiguous if it is reasonably susceptible of two interpretations. Nester v. O'Donnell, 301 N.J.Super. 198, 210, 693 A.2d 1214 (App.Div.1997) (quoting Kaufman v. Provident Life & Cas. Ins. Co., 828 F.Supp. 275, 283 (D.N.J.1992), aff'd, 993 F.2d 877 (3d Cir.1993)). The issue of ambiguity is one of law. Ibid. (quoting Kaufman, supra, 828 F.Supp. at 282).
The trial judge found, correctly we believe, that there was no meeting of the minds of the drafters of the release with respect to its meaning. The record reflects that the attorney appointed to represent Aristone and Pennsylvania's attorney had different and conflicting agendas in that regard. The appointed attorney testified that he "explicitly wanted to eliminate any reference to any insurance carrier so that there was no confusion that th[e] release was between . . . Aristone and [Pennsylvania]." Pennsylvania's attorney testified that he wanted to have language in the release to include
[a]ll claims that had been or could have been asserted in the [declaratory judgment] action, all claims for defense, all claims for indemnity, regardless of whether Aristone incurred them directly or they were incurred on behalf of Aristone because, as we knew, Aristone was being defended by two other carriers, Selective and OneBeacon, and . . . Aristone wasn't literally incurring these costs and wasn't literally paying the indemnification, its insurers were.
The product of counsel's negotiation was a document that each attorney hoped would be interpreted to meet his goals, but without making that goal explicit in the document itself. In other words, the appointed attorney and Pennsylvania's attorney purposefully produced an ambiguous document, each for his own purposes.
What the two attorneys never did, and were apparently never directed to do by the insurers by whom they were being compensated and to which they were reporting on a regular basis, was discuss and resolve directly the issue of whether the settlement of the declaratory judgment action brought by Aristone and the terms of the release settling that action would bar or permit a future claim by OneBeacon against Pennsylvania in a subsequent action. *599 They apparently preferred to leave that issue for another day and, in doing so, they knowingly paved the way for the present litigation.
Counsel's actions and the inevitable result were inconsistent with the public policy behind the entire controversy doctrine, which is based on equitable principles intended to discourage fragmentation of litigation and to encourage the joinder of related claims in a single suit. K-Land Corp. No. 28 v. Landis Sewerage Auth., 173 N.J. 59, 70, 800 A.2d 861 (2002). The doctrine's guiding principle is judicial fairness, id. at 74, 800 A.2d 861; see also Cont'l Ins. Co. v. Honeywell Int'l, Inc., 406 N.J.Super. 156, 184 n. 19, 967 A.2d 315 (App.Div.2009); Jersey City Police Officers Benevolence Ass'n v. City of Jersey City, 257 N.J.Super. 6, 13, 607 A.2d 1314 (App.Div.1992), thereby imposing an obligation on litigants to bring additional claims and parties to the court's attention.
The doctrine initially applied only to claim preclusion and was at one time expanded to include mandatory joinder of parties. 700 Highway 33 LLC v. Pollio, 421 N.J.Super. 231, 235-36 (App.Div.2011) (citations omitted). However, the Supreme Court eventually returned its application to claim preclusion only and chose to address "`[t]he goals of avoiding piecemeal litigation and creating efficiency as related to parties . . . by substituting the mechanism of disclosure for the automatic requirement of joinder.'" Ibid. (alterations in original) (quoting Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co., 207 N.J. 428, 444, 25 A.3d 1027 (2011)).
Rule 4:5-1(b)(2) requires a party's first pleading to include
a certification as to whether the matter in controversy is the subject of any other action pending in any court or of a pending arbitration proceeding, or whether any other action or arbitration proceeding is contemplated; and, if so, the certification shall identify such actions and all parties thereto. Further, each party shall disclose in the certification the names of any non-party who should be joined in the action pursuant to R. 4:28 or who is subject to joinder pursuant to R. 4:29-1(b) because of potential liability to any party on the basis of the same transactional facts.
There is "a continuing obligation during the course of the litigation" to amend the certification "if there is a change in the facts stated in the original certification." Ibid.
Rule 4:28-1(a) requires joinder of a party
if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest in the subject of the action and is so situated that the disposition of the action in the person's absence may either (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or other inconsistent obligations by reason of the claimed interest.
Rule 4:28-1(c) requires "[a] pleading asserting a claim for relief [to] state the names, if known to the pleader, of any persons described in R. 4:28-1(a) who are not joined and the reason why they are omitted."
At the time he filed Aristone's complaint against Pennsylvania, the attorney appointed knew that OneBeacon, by which he had been retained and which was controlling that litigation, had a potential claim against Pennsylvania for contribution to the defense costs it was incurring in providing Aristone's defense in conjunction with Selective Way. He also knew that *600 there was a possibility, if not likelihood, that OneBeacon would seek to assert that claim in the future. For example, he testified that Adler had authorized differing settlement amounts for the underlying action depending upon whether OneBeacon would be able to seek reimbursement of defense costs. He also testified that he sought changes in the release specifically to preserve OneBeacon's ability to make such a claim in the future.
We conclude that the appointed attorney had an obligation under Rule 4:5-1(b)(2) and Rule 4:28-1(c) to disclose OneBeacon's potential claim for defense costs to the Law Division and Pennsylvania when he filed Aristone's complaint, and certainly by the time the matter was being settled. Had he done so, the judge responsible for the case could have required that all of the issues and parties be included and resolved in that single litigation, rather than in two separate actions. However, we also conclude that the attorney for Pennsylvania had a similar obligation under Rule 4:5-1(b)(2) to disclose the potential claim against his client or to insist that the settlement specifically include that claim. Consequently, both attorneys were remiss in failing to make the disclosures required by the Rules of Court.
Nevertheless, our review of the record convinces us that there was no double recovery by OneBeacon. The $150,000 paid by Pennsylvania in settlement of the action brought in Aristone's name was used for the settlement of the underlying action. The trial judge's award for Pennsylvania's share of the defense costs has not been shown to be unreasonable and is supported by the evidence. We therefore affirm the trial judge's verdict, despite the mutual failure to comply with Rule 4:5-1(b)(2), because we conclude that the parties and their attorneys entered into an intentionally ambiguous agreement and both sides failed to comply with the rule.
We reach a different result with respect to the award of counsel fees for the present action. Rule 4:42-9(a)(6) provides for an award of counsel fees "[i]n an action upon a liability or indemnity policy of insurance, in favor of a successful claimant." Aristone was the policy holder in this case, and it would have been entitled to fees under the rule. Although we are not unpersuaded by the legal merits of the motion judge's theory that an insurer in OneBeacon's position might have an "equitable claim" to fees under the theory of the rule, we need not reach that issue here because we conclude that OneBeacon is barred by the doctrine of unclean hands from seeking such an equitable remedy under the facts of this case.
In Borough of Princeton v. Board of Chosen Freeholders of Mercer, 169 N.J. 135, 158, 777 A.2d 19 (2001), the Supreme Court described the doctrine of unclean hands as follows:
The essence of that doctrine, which is "discretionary on the part of the court," Heuer v. Heuer, 152 N.J. 226, 238 [704 A.2d 913] (1998), is that "[a] suitor in equity must come into court with clean hands and he must keep them clean after his entry and throughout the proceedings." A. Hollander & Son, Inc. v. Imperial Fur Blending Corp., 2 N.J. 235, 246 [66 A.2d 319] (1949). "In simple parlance, it merely gives expression to the equitable principle that a court should not grant relief to one who is a wrongdoer with respect to the subject matter in suit." Faustin v. Lewis, 85 N.J. 507, 511 [427 A.2d 1105] (1981).
Despite the fact that the appointed attorney was nominally representing Aristone, we cannot, for present purposes, ignore the fact that he had been appointed by, was being paid by, and was following *601 the directions of OneBeacon in pursuing Aristone's declaratory judgment action against Pennsylvania. He had, as we have held, a duty to the court and the parties to disclose the probability that OneBeacon would make a separate claim against Pennsylvania for defense costs under the same policy at issue in the declaratory judgment action and he failed to do so. Although we have not barred OneBeacon's claim for reimbursement of its defense costs in the underlying action because Pennsylvania's attorney could also have raised that issue and there appears to have been no double recovery, we see no reason to invoke an equitable remedy to allow OneBeacon to recover the expenses associated with an unnecessary second litigation under the specific circumstances of this case. OneBeacon made the decision to seek contribution towards liability and costs in two actions rather than one. To allow it to recover its expenses for the second action would be especially unjust because it would result in Pennsylvania paying its own expenses for the second action as well as those of OneBeacon. We conclude that each carrier should bear its own legal fees in this action.
Consequently, we affirm the amended judgment on all issues except for the award of counsel fees to OneBeacon in this action, which we reverse.
Affirmed in part, reversed in part.
NOTES
[1] OneBeacon is the "transferee" of Potomac Insurance Company of Illinois, which issued the original policies involved in this case. The present litigation was filed by OneBeacon on behalf of Potomac. For the sake of clarity, we refer only to OneBeacon.
[2] Royal was not willing to participate in binding arbitration.
[3] Carter-Wallace, Inc. v. Admiral Ins. Co., 154 N.J. 312, 712 A.2d 1116 (1998).
[4] The complaint named a third defendant, which was voluntarily dismissed.
[5] Shortly thereafter, OneBeacon settled with Royal.
[6] Inclusion of the word "defense" in paragraph 16 was a typographical error, according to Pennsylvania's attorney, because he failed to strike all the language that the attorney appointed for Aristone wanted stricken.
[7] Ertle had gone out of business and was judgment proof.